# United States Court of Appeals
## For the First Circuit

No. 99-2167

UNITED STATES,

Appellant,

v.

REGINALD SHEPARD,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Chief Judge,
Lipez, Circuit Judge
and Keeton,* District Judge.

Nadine Pellegrini, Assistant U.S. Attorney, with whom Donald
K. Stern, United States Attorney, Dina Michael Chaitowitz,
Timothy Q. Feeley, Assistant U.S. Attorneys, were on brief for
appellant.
Linda J. Thompson, with whom Jacobson & Thompson, P.C., were
on brief for appellee.

November 13, 2000

_____

**LIPEZ, Circuit Judge**. This case requires us to decide the following question: may a sentencing court consider certified copies of police reports and complaint applications to determine whether a defendant pled guilty to three prior "violent felonies" qualifying for sentence enhancement under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). This question arises because the Massachusetts breaking and entering statute encompasses unlawful entries into buildings, vehicles, or vessels. For purposes of the ACCA, however, breaking and entering into a building qualifies as a violent felony, while breaking and entering into a vehicle or vessel does not.

On at least five prior occasions, Reginald Shepard had pled guilty to breaking and entering on the basis of a complaint that recited the boilerplate language of the statute. The government submitted police reports and complaint applications to the district court to show that Reginald Shepard had pled guilty to breaking and entering buildings on these five prior occasions. At sentencing, the district court concluded that the Supreme Court decision in Taylor v. United States, 495 U.S. 575 (1990), and our own precedents applying Taylor, prohibited consideration of the complaint applications and police reports. In the view of the district court, such consideration would be inconsistent with the categorical approach to the analysis of

-3-

predicate offenses announced in <u>Taylor</u> because police reports and complaint applications "contain allegations that were never adjudicated before a judge or jury, never admitted by Shepard." We disagree with the court's reading of <u>Taylor</u> and our precedents. We vacate the district court's ruling and remand for resentencing.

## I.

On October 17, 1995, Reginald Shepard sold firearms to an undercover agent of the Bureau of Alcohol, Tobacco, and Firearms. During the taped meeting, Shepard sold a Glock 17, 9mm pistol for $600 and ammunition for $20.00. On March 3, 1999, Shepard entered a guilty plea to one count of felon in possession of a firearm, 18 U.S.C. § 922(g)(1). The ACCA mandates a fifteen-year minimum penalty for a person convicted as a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g) who has three prior convictions for a violent felony or serious drug offense. <u>See</u> 18 U.S.C. § 924(e)(1). The government claimed that five of Shepard's eleven prior convictions were burglaries of buildings, a category of violent felony under the ACCA.

The complaints charging Shepard with breaking and entering recited the language of Chapter 266, sections 16 and 18, of the Massachusetts General Laws which define the offense

to include unauthorized entry into vehicles or vessels, as well as buildings.[1]  For example, a complaint from May 1989 states that Shepard "did break and enter in the night time the building, ship, vessel or vehicle, the property of Jerri Cothran, with intent to commit a felony therein."

In Taylor v. United States, 495 U.S. 575, 598 (1990), the Supreme Court adopted a "generic" definition of burglary for purposes of ACCA enhancement that limits the crime to "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."  To show that Shepard's breaking and entering convictions involved buildings rather than vehicles or vessels, the Government offered certified copies of complaint applications and police

---

[1]Section 16 provides:
    Whoever, in the night time, breaks and enters a building, ship, vessel or vehicle, with intent to commit a felony, . . . shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one-half years.
MASS. GEN. LAWS ch. 266, § 16.
Section 18 provides:
    Whoever, in the night time, enters a dwelling house without breaking, or breaks and enters in the day time a building, ship or motor vehicle or vessel, with intent to commit a felony, no person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than five hundred dollars and imprisonment in jail for not more than two years.
MASS. GEN. LAWS ch. 266, § 18.

reports obtained from the state court files.[2]  These documents

contain the following accounts of the five offenses at issue.

May 1989:  The Boston police report states:

> Responded to R.C. [radio call] to 30 Harlem
> St. for B & E in progress.  On arrival
> observed cellar door in rear had been broken
> down.  Spoke to victim who [said] she heard
> noises downstairs. She then observed suspect
> described above in her pantry.

Consistent with the police report, the complaint application

states that the defendant was charged with "breaking and

entering night;" that the place of offense was "30 Harlem St.,"

and that the property stolen or destroyed was a "cellar door."

March 1991: The Watertown police report states:

> In reference to . . . a B&E&L from the
> FRETTERS store #     550 Arsenal Street Town
> reported on 3-11-91 the following is
> submitted:
>
>      A follow-up investigation revealed
> that while the manager . . . and the
> assistant Manager . . . were in the back-
> room to the above buisness [sic] . . . they
> observed the back door open and observed a
> former employee, Reginal Shepard of #9
> Weaver Way Roxbury, enter the room.  Upon
> seeing the two managers, the suspect Shepard
> ran from the room in a northerly direction
> out the parking lot toward arsenal street.

---

[2] By certifying a document, the signer attests that it has been accurately copied, not that the facts in it have been verified. The certifications of the police reports and complaint applications signed by the clerk or magistrate in this case state: "I hereby certify that this is a true copy, given under my hand and seal this 6 day of May 1999."

NOTE* According to both employee's [sic] this door was locked and the only way in was with a key which they suspect Shepard had in his possession. . . .

After this incident took place both [managers] did a quick inventory of the backroom area and found that (4) Emerson VCRs (20) 13" Hitachi T.V.s and (1) 19" Toshiba T.V. were missing.[3]

July 1991: The Boston police report states:

Officers ... responded to a radio call for an S/P wearing red shorts and blue shirt in the hallway of 258 Norwell St.

Upon arrival observed S/P (described above) walking away from above address. S/P carrying a pink pillowcase. Officers detained S/P to conduct threshold inq., found pillowcase to contain property listed above. . . . Officers checked bldg and found a panel on 3rd floor front door had been broken in exposing inside door lock. Officers entered apt. and observed, in living room, areas where V.C.R. and phone were taken from. Officers also observed in bedroom one pink pillowcase missing from pillow. Sheets and pillowcases in bedroom were all pink in color.

Consistent with the police report, the complaint application states that the defendant is charged with "b/e daytime," that the place of offense is "258 Norwell St." and that the property stolen or destroyed was a "V.C.R" and "phone/ans. machine."

February 1994: The Watertown police report states:

[R]esponded to a R/C [radio call] for a black male going door to door asking for an

_____

[3] The record does not include a complaint application.

> unk. person. . . . [Witness said suspect]
> went next door to #145 Gallivan and was
> observed by the witness attempting to gain
> entry by turning several door knobs . . .
> [O]fficer ... went to the rear of the
> property and suspect was observed with both
> arms through the glass partition (Glass to
> door was shattered) attempting to gain entry
> to    the second door (near basement).

The complaint application states that the defendant was charged with "1. breaking & entering 2. wilful malicious destruction of personal property," that the place of offense was "145 Gallivan Blvd.," and that the property stolen or destroyed was a "rear door."

April 1989: According to the district court:[4]

> The complaint application suggested that a
> building was involved, alleging that Shepard
> gained access to the Children's Center by
> breaking a window, and in so doing, he put
> the Director of the Center in fear.

The Probation Department included in the Pre-Sentence Report (PSR) descriptions of the police reports and complaint applications. The department concluded, however, that the court could not sentence Shepard as an armed career criminal because it could not use those documents to determine whether Shepard had pled guilty to a violent felony.  Shepard agreed with the

---

[4] We quote from the district court's rendering of the complaint application because we do not have the application in the record before us. The district court notes that the government did "not provide any additional documentation."

-8-

department's conclusion, but he objected to the inclusion in the PSR of factual allegations other than those set forth in the complaints to which he had pled guilty in state court. The government also filed an objection with the court challenging the Probation Department's failure to apply the ACCA enhancement.

At the conclusion of a two-part sentencing hearing, the court rejected the government's request for an enhancement under the ACCA, which would have placed Shepard's sentencing range at 188-235 months. Instead, the court sentenced Shepard pursuant to the "prohibited person" provision, U.S.S.G. § 2K2.1(a)(6)(A), which prescribes a base offense level of 14 for a person who receives, possesses, or transports a firearm and has a prior conviction for a "crime punishable by imprisonment for more than one year," U.S.S.G. § 2K2.1, comment. (n.6). The court also granted the government's motion for an upward departure pursuant to U.S.S.G. § 4A1.3 due to the seriousness of Shepard's criminal history and increased his sentencing range from 30-37 months to 37-46 months. We quote at length the district court's lucid rationale for its decision:

> Police reports and complaint applications do not meet the narrow exception to the categorical approach. They contain allegations that were never adjudicated before a judge or jury, never admitted by Shepard. In fact, there is no indication

-9-

that the sentencing judge in the original case even had any of these documents available when he or she sentenced Shepard. See Dueno, 171 F.3d at 6 (noting the government provided no documents which had been before the judge when the plea was accepted).

No plea colloquies or plea agreements were offered to suggest that Shepard adopted one version of the facts rather than another for each of the convictions. Moreover, because Shepard objected to the factual representations in the PSR, the government cannot rely on the characterizations found within. See Harris, 964 F.2d at 1236-37.

In fact, not only did Shepard not litigate these facts, he had no idea he had to do so. These facts -- the location of the breaking and entering -- were not necessary to his state plea. It is only now, years later, that they seem central because of a federal sentencing regime enacted years after Shepard pled.

Contrast Shepard's situation with that of a federal defendant pleading guilty today. Now, federal defendants who plead guilty make strategic decisions about which facts to contest and which to accept, carefully considering the impact their admissions will have on the ultimate sentence. The plea colloquy has assumed new significance, which it never had in state court.

To attach such importance to facts neither litigated nor conceded violates the policies articulated by the Supreme Court in Taylor, and subsequent First Circuit precedent. See Taylor, 495 U.S. at 600-602 (unfair to impose a sentencing enhancement based on the federal court, rather than the state court's review of the facts); Dueno, 171 F.3d at 6 (sentence defendant only for those specific

"prior crimes of which he was convicted by a trier of fact or by his own admission").

The government brought this appeal, arguing that the district court erred by refusing to consider the police reports and complaint applications and by not sentencing Shepard as an armed career criminal. The question of "[w]hether a conviction for a particular type of crime qualifies as a predicate offense [under the Armed Career Criminals Act] presents a purely legal question, sparking de novo review." United States v. Winter, 22 F.3d 15, 18 (1st Cir. 1994).

## II.

### A. The Taylor Categorical Approach

The Armed Career Criminals Act provides that a person who violates the felon in possession of a firearm provision (§ 922(g)) and has three prior convictions "for a violent felony or serious drug offense, or both, committed on occasions different from one another" will receive a fifteen-year minimum sentence.[5] 18 U.S.C. § 924(e)(1). The statute defines a violent felony as:

---

[5] When the ACCA applies, the Guidelines address whether, based on the defendant's criminal history and offense level, the fifteen-year minimum or a greater sentence is warranted. U.S.S.G. § 4B1.4 specifies how the court should calculate the defendant's criminal history and base offense level so that it can use the sentencing grid to determine the length of imprisonment beyond the statutory minimum.

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

In Taylor v. United States, 495 U.S. at 596-600, the Supreme Court considered whether the defendant's prior burglary convictions qualified for enhancement under § 924(e) despite the defendant's contention that the convictions did not involve conduct that presented a serious potential risk of physical injury to another.  The United States Court of Appeals for the Eighth Circuit had rejected Taylor's argument, ruling that the word burglary in § 924(e)(2)(B)(ii) "means 'burglary' however a state chooses to define it." United States v. Taylor, 864 F.2d 625, 627 (1989).  The Supreme Court disagreed, concluding that predicate offenses under the ACCA are "crimes having certain common characteristics--the use or threatened use of force, or the risk that force would be used--regardless of how they were labeled by state law."  Taylor, 495 U.S. at 589.  The Court called this focus on crimes having certain specified elements or common characteristics a "categorical approach," which the Court attributed to Congress.  In order to implement the categorical

-12-

approach in Taylor, the Court concluded that Congress "had in mind a modern 'generic' view of burglary, roughly corresponding to the definitions of burglary in a majority of the States' criminal codes." Id. The court found that definition to be the following: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 598.

Having settled upon the generic definition of burglary intended by Congress in the ACCA, the Court turned to a second question in Taylor: "whether, in the case of a defendant who has been convicted under a nongeneric-burglary statute [e.g. one that includes places, such as automobiles and vending machines, other than buildings], the Government may seek enhancement on the ground that he actually committed a generic burglary." Id. at 599-600. In addressing that question, the Court again invoked the categorical approach intended by Congress. It noted that "the practical difficulties and potential unfairness of a factual approach are daunting," id. at 601, and concluded that the categorical approach to the nongeneric burglary statute "requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." Id. at 602.

Then the Court immediately offered a qualification to the rule it had just announced:

-13-

> This categorical approach, however, may
> permit the sentencing court to go beyond the
> mere fact of conviction in a narrow range of
> cases where a jury was actually required to
> find all the elements of generic burglary.
> For example, in a State whose burglary
> statutes include entry of an automobile as
> well as a building, if the indictment or
> information and jury instructions show that
> the defendant was charged only with a
> burglary of a building, and that the jury
> necessarily had to find an entry of a
> building to convict, then the Government
> should be allowed to use the conviction for
> enhancement.

Id. This qualification permits a court to consider the charging

document and jury instructions and to conclude that the fact of

conviction necessarily means conviction of the generic crime of

burglary included in the ACCA.[6]

In Taylor, however, the Court did not address the

extent to which a sentencing court can go beyond the fact of

conviction, for the purpose of determining an ACCA enhancement,

when a defendant has *pled guilty* to a charge based on a statute

that includes both violent and non-violent offenses within the

---

[6] In addition to specific crimes such as burglary, arson, and extortion, the Armed Career Criminal Act defines as a "violent felony" a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). We have regarded the Taylor categorical approach for burglary as applying to other kinds of felonies that may qualify as violent under the "otherwise" clause. See United States v. Sacko, 178 F.3d 1, 7 (1st Cir. 1999).

-14-

meaning of the ACCA.  That is the issue we have addressed in our precedents,[7] and to which we now turn.

## B.  The Categorical Approach and the Guilty Plea

Not surprisingly, our precedents separate into two strands that reflect the two distinct questions addressed by the Supreme Court in Taylor. We will discuss them accordingly.

### 1. Whether the Applicable State Statute Defines a Violent Felony or a Crime of Violence

As we noted, the Taylor Court first decided what common elements of burglary would make it a violent felony under the

_____

[7] To be precise, our precedents address this issue in the context of both the Guidelines' career offender enhancement for crimes of violence and the Armed Career Criminal Act's enhancement for violent felonies.  The career offender enhancement applies if the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  See U.S.S.G. § 4B1.1.  The commentary to U.S.S.G § 4B1.4 states: "It is to be noted that the definitions of 'violent felony' and 'serious drug offense' in 18 U.S.C. § 924(e)(2) are not identical to the definitions of "crime of violence" and "controlled substance offense" used in § 4B1.1 (Career Offender) . . . ."  U.S.S.G § 4B1.4, cmt.n.1.  Despite the differences between § 4B1.1 and § 924(e)(2), the categorical approach applies to both provisions and we may look to the § 4B1.1 cases to elucidate the nature of the categorical inquiry.  See, e.g., United States v. Meader, 118 F.3d 876, 882 (1st Cir. 1997)(although Taylor's narrow exception may apply to cases that come under the "otherwise" clause of § 4B1.2, "the standard approach for determining whether a particular crime fits within the 'crime of violence' rubric is a generic one, in which inquiry is restricted to the statutory definitions of the prior offense, without regard to the particular facts underlying them"); United States v. Winter, 22 F.3d 15, 18 (1st Cir. 1994)("Determining whether a previous conviction represents a crime of violence necessitates a formal categorical approach.").

ACCA. In United States v. Damon, 127 F.3d 139 (1ˢᵗ Cir. 1997) and in United States v. Sacko, 178 F.3d 1 (1st Cir. 1999), the comparable question was whether the statutory offenses at issue in those cases constituted a crime of violence within the meaning of the Guidelines (Damon) or a violent felony within the meaning of the ACCA (Sacko). This was a general definitional question that did not depend on documents specific to that case.

In Damon, we considered the district court's use of a PSR to determine whether a Maine conviction for aggravated criminal mischief constituted a "crime of violence." The charging document indicated that Damon was convicted under subsection B of the statute, which applies to a person who intentionally or knowingly damages or destroys property valued at over $2,000 in order to collect insurance proceeds. See Damon, 127 F.3d at 142-43. Thus, "[t]he inquiry is whether the elements of subsection B fit the definition of a crime of violence under U.S.S.G. § 4B1.2(1)(ii)." Id. at 143. We looked to the "mine run of conduct" that the statute was intended to cover and concluded that "the typical conduct reachable under subsection B does not involve a serious potential risk of physical injury to another." Id. at 143-44. We concluded that the district court erred by considering the fact that the defendant set fire to his house to collect insurance proceeds

because "[u]nder Taylor, when the predicate statutory crime has been determined to be typically non-violent, the inquiry ends." Id. at 145.

In Sacko, we concluded that the district court erred by considering the statement in the PSR that the defendant's prior statutory rape conviction involved non-consensual intercourse. That consideration involved the very reliance proscribed by Taylor

--reliance on "the facts of Sacko's crime in order to determine whether his conviction was for a violent or a non-violent crime," Sacko, 178 F.3d at 5. We held that under the categorical approach, the proper inquiry was whether the category of the offense, statutory rape of a fourteen year-old, constituted a violent felony. We noted that there was "no legal basis . . . no studies or medical journals" to ground a holding that intercourse with an adult is physically dangerous for a fourteen-year-old female. Id. at 6. We remanded the case to the district court to take evidence on this issue.

Both Damon and Sacko posed the definitional question whether the statutory offenses at issue constituted a crime of violence under the career offender guideline (Damon) or a

violent felony within the meaning of the ACCA (Sacko).[8]  There was no uncertainty about whether a violent or non-violent offense encompassed within a statute was involved in the fact of conviction.  As we noted in Damon, such cases do not "raise the question of what documents beyond the charging document or the jury instructions may be examined to determine which subsection of the multi-faceted crime is involved.  The question about what subsection or type of statutory crime is involved is resolved here by the charging document."  127 F.3d at 144 n.5.

---

[8] Our circuit addressed related definitional questions in two other cases, United States v. Winter, 22 F.3d 15 (1st Cir. 1994) and United States v. Meade, 175 F.3d 215 (1st Cir. 1999).

In Winter, the issue before the court was whether racketeering, conspiracy to commit racketeering, travel in aid of racketeering, and sports bribery qualified as predicate crimes of violence under the career offender guideline. Because physical force is not an element of any of these offenses, we asked whether, from a categorical standpoint, any of them could be said to pose "serious risk of physical injury," as the guideline required. Following Taylor, we cautioned that "the court should not plunge into the details of a particular defendant's conduct," but, rather, "should merely assess the nature and object of the racketeering activity as described in the indictment and fleshed out in the jury instructions." Winter, 22 F.3d at 19.

Meade involved the question of whether the defendant's misdemeanor conviction for spousal assault, under a general assault and battery statute, qualified as a misdemeanor crime of domestic violence. The court construed the underlying statute to determine that the conviction did so qualify, rejecting the defendant's argument that Taylor's categorical approach should extend so far as to prevent courts from establishing the elements of the statute of conviction. See Meade, 175 F.3d at 221.

2. Whether the Fact of Conviction was for a Violent or Non-Violent Felony When the Applicable State Statute Encompasses Both

The second question addressed in Taylor was whether a conviction under a nongeneric burglary statute, which included violent and nonviolent offenses, could be a conviction for a predicate offense under the ACCA. In United States v. Harris, 946 F.2d 1234 (1st Cir. 1992) and United States v. Dueno, 171 F.3d 3 (1st Cir. 1999), we addressed a comparable question. There was no definitional uncertainty in those cases about whether a statutory offense constituted a violent crime. Instead, the uncertainty was whether the fact of conviction related to a violent crime or a nonviolent crime. As we recognized, that uncertainty could only be resolved by considering case specific documents.

In Harris, the defendant pled guilty to a Massachusetts assault and battery statute which covered both actual or potential physical harm and unharmful but nonconsensual touching. We acknowledged the general rule under Taylor that when the statute encompasses violent and non-violent conduct, the sentencing court should look to the indictment and information or jury instructions to make the violent felony determination. However, we recognized that Harris's case posed a further question: "What . . . should a court do when there are

-19-

no jury instructions to look at . . . because the defendant pled guilty?" Harris, 964 F.2d at 1235. In answer to that question, we said the sentencing court should:

> look to the conduct in respect to which the defendant was charged and pled guilty, not because the court may properly be interested . . . in the violent or non-violent nature of that particular conduct, but because that conduct may indicate that the defendant and the government both believed that the generically violent crime . . . rather than the generically non-violent crime . . . was at issue.

Id. at 1236.

We concluded in Harris that "[t]he record before us provides adequate information to make the required determination relatively simply." Id. In particular, we considered a PSR which recited facts from the case file revealing that both of the defendant's assault and battery convictions involved violent beatings. Id. at 1236-37. We found the PSR to be a reliable source for establishing whether the defendant pled guilty to a violent crime because the basic facts alleged in the PSR--i.e., that the defendant perpetrated a violent assault--were "uncontested and uncontradicted." Id. at 1237. Given the PSR's uncontradicted account of the defendant's conduct, we concluded "that the defendant and the government both believed" that a

generically violent crime was the basis for the defendant's guilty pleas. Id. at 1236.

In United States v. Dueno, 171 F.3d 3, 6-7 (1st Cir. 1999), despite strong urging from the defendant, we refused to retreat from Harris's limited inquiry into conduct "in respect to which the defendant was charged and pled guilty." Dueno, 171 F.3d at 5 (analyzing the Guidelines' career offender enhancement). As here, Dueno involved a predicate Massachusetts breaking and entering conviction memorialized by a judgment which was ambiguous as to whether the defendant broke into or entered a building or a vehicle. See id. at 5. On appeal, the government conceded that the district court had engaged in erroneous reasoning in concluding that the conviction was for breaking into and entering a building,[9] but urged us to sustain the enhancement on the ground that Dueno never contradicted the PSR's account of the break-in, which described a building invasion. See id. at 6. Although we regarded the issue as "close," we declined to affirm on the government's alternative

---

[9] The court had accepted the government's argument that a second charge in the complaint for destruction of property, which alleged harm to "the personal property, dwelling, house or building of [the victim]," established that Dueno broke into and entered a building, and thus committed a crime of violence. On appeal, the government conceded that this description could refer to unlawful entry and vandalism of a vehicle as much as to destruction of property related to breaking and entering into a building. See Dueno, 171 F.3d at 5-6.

-21-

ground and instead remanded. Id. at 7. Applying Harris, we concluded that "on the present record, a reasonable jurist could conclude that there is insufficiently reliable evidence to ground a finding that Dueno pleaded guilty to breaking into and entering a building." Id. at 7. Specifically, we noted several problems with the evidence presented to the sentencing court. First, instead of offering the police report from which the facts were taken, the government offered only the PSR which incorporated facts from the police report. Second, the evidence did not include "a single document that was before the judge who accepted Dueno's plea." Id. at 7. Third, there was no account of what took place at Dueno's plea hearing.

> At the conclusion of Dueno, we said the following:

> > Dueno's sentence for this crime can reflect only those prior crimes of which he has been convicted -- either by a trier of fact or by his own admission. As matters now stand, the evidence is insufficient for us to conclude, as a matter of law, that Dueno's 1994 guilty plea constituted an admission to the building invasion described by the police report.

Dueno, 171 F.3d at 7 (emphasis added). In its decision in this case, the district court relied on the language we emphasize. Although the court's reliance on this language is understandable, that reliance nevertheless reflects a

-22-

misapplication of <u>Harris</u>, reaffirmed by the <u>Dueno</u> decision, and of <u>Dueno</u> itself.

## C.  Consideration of Police Reports and Complaint Applications

<u>Dueno's</u> reference to an admission by the defendant cannot be read apart from the inquiry framed in <u>Harris</u>: looking to the conduct in respect to which the defendant was charged and pled guilty, did "the defendant and the government both believe[] that the generically violent crime . . . rather than the generically non-violent crime . . . was at issue." <u>Harris</u>, 964 F.2d at 1236.  In fact, having reaffirmed <u>Harris</u>, <u>Dueno</u> describes the sentencing court's inquiry into the meaning of the defendant's guilty plea in a specific sense that reflects <u>Harris</u>--does the defendant's plea of guilty "constitute an admission" to a crime of violence?  <u>See</u> <u>Dueno</u>, 171 F.3d at 7 ("the evidence is insufficient for us to conclude, as a matter of law, that Dueno's 1994 guilty plea constituted an admission to the building invasion described by the police report") (emphasis added). The court's determination on the violent felony or crime of violence question does not turn on an explicit admission by the defendant to alleged conduct in the sense of "yes, I struck the victim in the face," either at the time the defendant pled guilty to the earlier offense or when the enhancement issue arises at sentencing for a subsequent

-23-

offense. Rather, the court's determination about the meaning of the guilty plea can be made on the basis of sufficiently reliable evidence independent of a fact-specific admission. See United States v. Broce, 488 U.S. 563, 570 (1989) ("By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.").

Nevertheless, Harris and Dueno leave open the question of what documents are sufficiently reliable evidence for determining whether a defendant's plea of guilty constitutes an admission to a generically violent crime under a statute that encompasses violent and non-violent conduct. In Harris, we allowed the district court to rely on an uncontradicted PSR. In Dueno, where the court had used faulty reasoning in making its crime of violence determination, we declined to rule that the uncontradicted narration of events in the PSR established that Dueno had pled guilty to a crime of violence. Rather, in concluding that the issue reasonably could be decided either way, we pointed out that the government did not offer the police report from which the facts in the PSR were taken, nor any other document that was before the judge who accepted Dueno's plea.

Here, noting the deficiencies cited in Dueno, the government offered certified copies of police reports and

complaint applications. Based on our precedents, we see no justification for an absolute bar to the consideration of such documents when the sentencing court must determine whether the defendant and the government both believed that the defendant was entering a guilty plea to a generically violent crime.[10] Such a bar would make the use of prior convictions based on guilty pleas for purposes of the ACCA or criminal offender guideline enhancement hinge on the happenstance of state court record-keeping practices. The enhancement would only apply when a plea agreement or a plea transcript had been preserved that

---

[10] Other circuits have not addressed the precise question of whether police reports and complaint applications are reliable evidence for determining whether a defendant has pled guilty to a violent crime when the statute under which he is charged addresses violent and non-violent conduct. Some courts, however, have allowed consideration of documents such as PSRs, plea agreements, and plea transcripts. See United States v. Bonat, 106 F.3d 1472, 1476 (9th Cir. 1997) (district court properly relied on plea transcript to determine whether defendant pled guilty to generic burglary); United States v. Adams, 91 F.3d 114, 116 (11th Cir. 1996) (district court properly considered PSR to determine whether defendant's prior conviction was for generic burglary); United States v. Hill, 53 F.3d 1151, 1154 (10th Cir. 1995) (en banc), cert. denied, 516 U.S. 900 (1995) (district court may consider text of guilty plea and/or other documents that, coupled with the charging instrument, enable the court to determine that defendant's prior conviction was for generic burglary); United States v. Gallman, 907 F.2d 639, 645 n.7 (7th Cir. 1990), cert. denied, 499 U.S. 908 (1991) (district court should refer to plea agreement or plea transcript to determine whether defendant's prior conviction was for generic burglary). But see United States v. Barney, 955 F.2d 635, 639 (10th Cir. 1992) ("we do not hold . . . that the sentencing court determining enhancement may rely on the presentence report").

showed a defendant pled guilty to a violent felony or a crime of violence.  Indeed, in <u>Dueno</u>, where we could have easily adopted a bright-line rule barring the use of police reports, we did not. We noted instead the absence in the record of "a copy of the police report in question" or of "an explanation where the police report came from."  <u>Dueno</u>, 171 F.3d at 7.  These specific deficiencies made the PSR account insufficiently reliable for us to determine as an initial matter and as a matter of law that Dueno pled guilty to breaking and entering into a building.

The district court in this case did not attempt to evaluate the reliability of the police reports and complaint applications as a basis for the finding contemplated by both <u>Harris</u> and <u>Dueno</u>--whether the defendant and the government both believed that Shepard was entering guilty pleas to the generically violent crime of breaking and entering a building. In addressing that issue, the court should have asked the kind of questions suggested by our precedents.  As discussed in <u>Dueno</u>, did the court taking the guilty plea have before it the police reports and complaint applications described in the PSR, or any other documents describing the defendant's conduct? Where did the police reports come from? What took place at Shepard's plea hearings? More specifically, as  discussed in <u>Harris</u>, did the defendant provide anything at his plea hearings

to contest the facts set forth in the police reports and complaint applications, thereby suggesting that the government and the defendant did not share an understanding that he was pleading guilty to an offense that had the elements of a generically violent crime? We cite these questions from our precedents as illustrative of the kind of inquiry that should be made. They are not offered as an exhaustive list.

The reference above to a defendant's contesting the facts set forth in a police report requires us to address a confusion relating to the concept of an admission when the enhancement issue arises at sentencing. The district court stated that "if the relevant facts contained in the PSR are uncontested, the court may consider these as further admissions by the defendant." See also Dueno, 171 F.3d at 7; Harris, 964 F.2d at 1236-37. That statement is accurate. Such admissions would be important for the reasons they were important in Harris:

> These two items of uncontested and uncontradicted information make clear that neither of the two "assault and battery" crimes for which Harris was charged and convicted were "nonconsensual touching" crimes, and both were of the "physically harmful" or "potentially physical harmful" variety.

Harris, 964 F.2d at 1237. These admissions during the sentencing process are an example of reliable evidence that

would permit a sentencing court to conclude that the defendant's guilty plea to a prior offense constituted an admission to a generic violent felony or crime of violence. But it does not follow from this proposition that any objection posed by a defendant at the time of sentencing to the facts set forth in a PSR, or in an underlying police report or complaint application, precludes the court from finding that the defendant's guilty plea constituted such an admission. Such a result would be inconsistent with the preponderance of the evidence standard that generally applies when a court determines whether a defendant qualifies for an enhancement under the ACCA or career offender provision. See United States v. Spell, 44 F.3d 936 (11th Cir. 1995).

Therefore, the nature of the objection posed to a PSR, or to underlying documents relied upon by the government, must be considered carefully. The district court suggests that Shepard contested the accuracy of the facts in those documents that are relevant to whether he committed a generically violent crime. "At no point--then or now, during the various plea colloquies, or at this sentencing--did Shepard concede the facts on which the government now relies. Indeed, Shepard expressly contested any characterizations of these convictions that went beyond the words of the complaint." However, Shepard's Taylor-

- 27 -

based categorical objection to the use of the complaint applications and police reports does not challenge the accuracy of the statements in those documents describing entries into buildings.  Shepard stated that these documents generally carry a high risk of unreliability without ever explaining why that was true in his case. Shepard's general challenge to the appropriateness of the PSR setting forth accounts of his past crimes, or to the reliance on police reports and complaint applications for those accounts, left those accounts uncontradicted, just as they were in Harris and Dueno.

     We cannot anticipate the specific objections that Shepard might pose to the government's documents. We can emphasize, however, that the issue before the sentencing court is not what Shepard did to provoke the criminal charges to which he pled guilty.  Rather, the issue, again, is the one framed in Harris: did  the defendant and the government both believe at the time Shepard entered his pleas "that the generically violent crime . . . rather than the generally non-violent crime . . . was at issue."  Id. at  1236.  To conclude otherwise would enmesh the district court in the kind of factually disputed "archeological dig" about the defendant's conduct that Taylor guards against, with all the attendant practical difficulties of

holding mini-trials on a defendant's prior convictions.  See Winter, 22 F.3d at 19.

Shepard's objections to the government's police reports and complaint applications might focus, for example, on any inconsistencies or ambiguities in their description of the defendant's conduct, or any circumstances relating to the creation or reproduction of the documents, that affect their usefulness for determining whether Shepard and the government both believed that an entry into a building was at issue when he entered the guilty pleas.  Or Shepard might offer an account of what took place at his plea hearings, including the documents before the judge, that raises questions about that issue. If the government needs to respond to such objections, the response should usually be "limited to examining easily produced and evaluated court documents, including the judgment of conviction, charging papers, plea agreement, presentence report adopted by the court, and the findings of a sentencing judge." Spell, 44 F.3d at 939.  To that list we add transcripts of the plea hearing or other documents that were before the judge who accepted the guilty plea at issue.

In the face of plausible objections from Shepard, and in the absence of a sufficient response from the government, the court may decide that it cannot conclude by a preponderance

of the evidence that his pleas of guilty constituted admissions to unlawful entries into buildings. The government, of course, "bears the burden of proving the applicability of an upward adjustment under the guidelines [or the ACCA]," Dueno, 131 F.3d at 7.

### III.

In Taylor, the Supreme Court said that the sentencing court could go beyond the mere fact of conviction "in a narrow range of cases where a jury was actually required to find all the elements of generic burglary." Taylor, 495 U.S. at 602. By examining the indictment or information and jury instructions in such cases, the court could conclude "that the jury necessarily had to find" that the defendant had been convicted of the violent felony of entry into a building, i.e. a violent felony. Id.

The concept of a necessary finding does not apply to disputes about the meaning of a defendant's guilty plea, and whether that plea constitutes an admission to a violent felony or a crime of violence. As we have indicated, those disputes must be resolved by a finding of fact pursuant to the preponderance of the evidence standard. Such a finding is not a necessity. It is based on a judgment about the weight of the evidence.

- 30 -

Without minimizing the high stakes involved in sentencing enhancements, we note that courts routinely resolve factual disputes during sentencing hearings. We see no reason why disputes about the meaning of a defendant's guilty plea should be immune from that process, so long as the inquiry is consistent with the principles of Taylor. We believe that we have described such an inquiry here.

In Taylor, the Supreme Court explained why it would be unfair for a sentencing court to look to the facts underlying the prior conviction to determine if a defendant had pled guilty to a violent felony. "Even if the Government were able to prove those facts, if a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary." Taylor, 495 U.S. at 601-02. We, of course, agree. It would be decidedly unfair to determine subsequently, for the purpose of sentence enhancement under the ACCA or the career offender guideline, that the conviction resulting from a guilty plea was for a violent crime, based on the actual conduct of the defendant, when the defendant in fact pled guilty to a non-violent crime. But we see no unfairness in a court deciding on the basis of sufficiently reliable evidence that the government and the defendant shared the belief that the defendant was

pleading guilty to a generically violent crime, and hence the defendant's plea constituted an admission to such a crime.

We also see no unfairness in a point emphasized by the district court in its decision rejecting consideration of the police reports and complaint applications--namely, that Shepard had no appreciation of the importance of challenging the location of the breaking and entering when he pled guilty to the breaking and entering charges in the Massachusetts courts because he could not anticipate that his convictions for these charges would be so important for subsequent sentencing under the ACCA. Logically, the premise of this concern is that Shepard would have tried to minimize his criminal history because of the possibility that he would commit another crime. We do not find persuasive a fairness argument grounded in such a premise. Sentencing enhancements do not punish a defendant for the prior criminal conduct. See Nichols v. United States, 511 U.S. 738, 747 (1994) ("Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction."). Rather, enhancements provide for "a stiffened penalty for the latest crime, which is

considered to be an aggravated offense because a repetitive one." Gryger v. Burke, 334 U.S. 728, 732 (1948).

In summary, the court below concluded that it could not consider the police reports and complaint applications offered by the government because of its erroneous view that the violent felony determination could only be based on adjudicated or specifically admitted facts. The court did not carry out the required analysis of whether the documents before it constituted sufficiently reliable evidence of the government and the defendant's shared belief that the defendant was pleading guilty to the unlawful entry of a building. We therefore vacate the sentence and remand for resentencing.

**Vacated and remanded.**