# United States Court of Appeals
## For the First Circuit

No. 01-1196

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE DELGADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Veronica J. White for appellant.
Kevin P. McGrath, Assistant United States Attorney, with whom
James B. Farmer, United States Attorney, and Michael D. Ricciuti,
Assistant United States Attorney, were on brief for appellee.

May 6, 2002

**LIPEZ, <u>Circuit Judge</u>.** This case requires us to decide whether the district court acted within its legal authority in relying upon a police report relating to a defendant's prior state conviction to conclude that he was a career offender and thus subject to an enhanced sentence under the federal sentencing guidelines. Concluding that the court exercised its sentencing authority properly, we affirm.

**I.**

On July 30, 1999, defendant-appellant José Delgado and a co-defendant sold crack cocaine (cocaine base) to an undercover agent of the Drug Enforcement Administration (DEA). On August 24, 1999, Delgado, with two other co-defendants, again sold cocaine base to that DEA agent. On December 8, 1999, Delgado and nine others were charged in a multi-count drug trafficking indictment. Delgado was indicted on one count of conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846, and two counts of cocaine base distribution and aiding and abetting that distribution, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Pursuant to a written plea agreement, Delgado pled guilty to these charges on September 6, 2000. At sentencing, the court concluded, over Delgado's objection, that he was a career offender and that, under the career offender guideline, U.S.S.G. § 4B1.1, his base offense level was 32, and his criminal history category was VI. Awarding Delgado a three-level reduction for acceptance of responsibility, the district court calculated his final adjusted

offense level at 29. The applicable sentencing range for a level 29 category VI offender was 151 to 188 months. The district court accordingly sentenced Delgado, inter alia, to 151 months' imprisonment followed by three years of supervised release.[1]

In determining Delgado's career offender status under § 4B1.1, the district court concluded that Delgado's criminal history included two prior convictions for crimes of violence, thus warranting an increase in the offense level for the instant offense.[2] On February 10, 1999, Delgado was convicted in state court of assault with a dangerous weapon, assault and battery on a police officer, and disorderly conduct, and sentenced to ninety days in prison. On April 1, 1999, Delgado pled guilty to the charge of breaking and entering with intent to commit a felony. The effect of this latter conviction on Delgado's federal sentence was hotly disputed by the parties at sentencing and now constitutes the core issue on appeal.

---

[1] Absent Delgado's career offender status, his sentence would likely have been seven years shorter than the 151 months he received.

[2] Delgado's criminal history also includes a 1996 conviction for cocaine possession under Puerto Rico law. A controlled substance offense may qualify as a predicate act triggering application of the career offender guidelines where the defendant possessed the drugs with the intent to manufacture, import, export, distribute or dispense them. See U.S.S.G. §§ 4B1.1 and 4B1.2. Here, however, as the government acknowledges, there is no indication in the Pre-Sentence Report that Delgado possessed the cocaine with any such intent; therefore, it does not appear that this conviction qualifies as a predicate offense for purposes of the career offender guidelines.

## II.

The career offender guideline, U.S.S.G. § 4B1.1, provides for an enhanced sentence if (1) the defendant was at least eighteen years old at the time he committed the offense for which he is being sentenced; (2) that offense is a felony that either constitutes a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions for either crimes of violence or crimes involving controlled substances. For application of the career offender provisions, the sentencing guidelines define "crime of violence" to encompass certain federal and state offenses punishable by more than a year in prison, including "burglary of a dwelling."[3]  U.S.S.G. § 4B1.2.

Here, Delgado -- who was 23 years old at the time of the instant controlled substance offense -- clearly satisfies the first two criteria under § 4B1.1.  Furthermore, Delgado concedes that his February 1999 conviction constitutes a crime of violence and thus qualifies as a predicate offense under § 4B1.1.  Delgado argues, however, that the breaking-and-entering offense to which he pled guilty in April 1999 does not constitute a crime of violence under

_____

[3]  Section 4B1.2 defines "crime of violence" as:

(a) . . . any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 4B1.1, and hence he is not a career offender within the meaning of the guidelines.[4]

## A.  The _Taylor_ Categorical Approach

In determining whether Delgado's April 1999 conviction constitutes a crime of violence, we follow the categorical approach outlined in _Taylor_ v. _United States_, 495 U.S. 575 (1990), and subsequent First Circuit precedent.  While questions of law concerning interpretation of the sentencing guidelines are reviewed de novo, the factual conclusions of the sentencing court, which must be supported by a preponderance of the evidence, are reviewed for clear error. _See_ _United States_ v. _Damon_, 127 F.3d 139, 141 (1st Cir. 1997); _United States_ v. _Grant_, 114 F.3d 323, 328 (1st Cir. 1997).

---

[4] Delgado also argues that the April 1999 conviction is not fit for inclusion in the career offender calculus because it was obtained in violation of Massachusetts state criminal procedure. This collateral attack on the validity of the April 1999 conviction is improper.  "[W]ith the sole exception of convictions obtained in violation of right to counsel," a defendant in a federal sentencing proceeding has no right to attack collaterally the validity of a prior state conviction used to enhance his federal sentence. _Custis_ v. _United States_, 511 U.S. 485, 487 (1994).  _See_ _also_ _United States_ v. _Cordero_, 42 F.3d 697, 701 (1st Cir. 1994) (quoting _Custis_ in context of § 4B1.1 career offender guideline).  This limitation on collateral challenges is intended to preserve the integrity of "the finality doctrine that serves to conserve scarce judicial resources and promote efficiency" and to prevent sentencing courts from having to "'rummage through frequently nonexistent or difficult to obtain state court transcripts or records that may date from another era, and may come from any one of the 50 States.'" _United States_ v. _Burke_, 67 F.3d 1, 3 (1st Cir. 1995) (quoting _Custis_, 511 U.S. at 496).  Delgado conceded at the sentencing hearing that he was represented by counsel in the state criminal proceedings relating to the April 1999 conviction.  Thus, we refuse to consider Delgado's collateral challenge to that prior conviction.

Under the Taylor approach, a sentencing court should "look only to the fact of conviction and the statutory definition of the prior offense" to determine whether a prior conviction qualifies as a predicate offense for sentencing enhancement purposes.[5]  Id. at 602.  See also United States v. Meader, 118 F.3d 876, 882 (1st Cir. 1997) (deciding whether a crime is a "crime of violence" is an inquiry "restricted to the statutory definitions of the prior offenses without regard to the particular facts underlying them"); United States v. Harris, 964 F.2d 1234, 1235 (1st Cir. 1992).

Sometimes, however, "looking to the statutory definition alone" will not establish whether the crime underlying the prior conviction was one of violence because some statutes contain language that covers both violent and non-violent crimes.  Harris, 964 F.2d at 1235 (internal quotation marks omitted).  Where the statutory definition encompasses both violent and non-violent offenses, a sentencing court may look to the charging document -- such as the indictment or information -- and jury instructions to

_____

[5]  In Taylor, the Supreme Court considered whether the defendant's prior burglary conviction constituted a "violent felony" under 18 U.S.C. § 924(e)(1), a sentence enhancement provision of the Armed Career Criminal Act.  495 U.S. at 577-78.  Although the § 924(e)(1) definition of "violent felony" is not identical to the § 4B1.1 definition of "crime of violence," we look generally to cases pertaining to either provision "to elucidate the nature of the categorical inquiry."  United States v. Shepard, 231 F.3d 56, 63 n.7 (1st Cir. 2000) (noting that "[d]espite the differences between § 4B1.1 and § 924(e)(2), the categorical approach applies to both provisions").  See, e.g., United States v. Fernandez, 121 F.3d 777, 778-79 (1st Cir. 1997) (applying categorical approach to § 4B1.1 "crime of violence" determination); United States v. Meader, 118 F.3d 876, 882-85 (1st Cir. 1997) (same).

ascertain whether the conviction was for a violent or non-violent crime. See Taylor, 495 U.S. at 602; United States v. Shepard, 231 F.3d 56, 63 (1st Cir. 2000); United States v. Sacko, 178 F.3d 1, 3 (1st Cir. 1999); Harris, 964 F.2d at 1235.

If the charging document only incorporates the unhelpfully broad statutory language and if there is no jury charge because the conviction is based on a guilty plea, a sentencing court may appropriately

> look to the conduct in respect to which the defendant was charged and pled guilty, not because the court may properly be interested (in this context) in the violent or non-violent nature of that particular conduct, but because that conduct may indicate that the defendant and the government both believed that the generically violent crime . . . rather than the generically non-violent crime . . . was at issue.

Harris, 964 F.2d at 1236. Thus, the issue before the sentencing court is not what the defendant "did to provoke the criminal charges to which he pled guilty." Shepard, 231 F.3d at 69. Rather, what is critical is "the meaning of the defendant's guilty plea" -- that is, whether the defendant's guilty plea "constitute[s] an admission" to a crime of violence under "the preponderance of the evidence" standard. Id. at 66, 68.

In discerning the plea's meaning, the court may rely on "sufficiently reliable evidence independent of a fact-specific admission." Id. at 66. Such evidence -- so long as it is deemed sufficiently reliable by the district court -- may include police reports. Id. at 67 ("Based on our precedents, we see no justification for an absolute bar to the consideration of [police

-7-

reports] when the sentencing court must determine whether the defendant and the government both believed that the defendant was entering a guilty plea to a generically violent crime.").

## B.  The Trial Court's Ruling on the Predicate Offense

Here, with respect to the April 1999 conviction, Delgado was initially charged in December 1998 with Home Invasion in violation of Mass. Gen. L. ch. 265, § 18C.  However, the Fitchburg District Court amended the charge of Home Invasion to Breaking and Entering in the Night Time with Intent to Commit a Felony.  Delgado pled guilty to that amended charge in April 1999.[6]

---

[6] It does not appear that an amended complaint was ever filed; instead, a notation was placed on a document entitled "Criminal Docket" to reflect the April 1999 amended charge.  Although the "Criminal Docket" document contains no explicit citation to a statute, both parties agree that Mass. Gen. L. ch. 266, § 16 is the statute which most closely tracks the language of the amended charge in that document. Furthermore, the sentence imposed, two years in a house of correction, is consistent with the penalty provisions of that offense.  Accordingly, we conclude (and Delgado does not dispute) that this statute sets forth the offense to which he pled guilty.  Section 16 states in relevant part:

> Whoever, in the night time, breaks and enters a building, ship, vessel or vehicle, with intent to commit a felony, or who attempts to or does break, burn, blow up or otherwise injures or destroys a safe, vault or other depository of money, bonds or other valuables in any building, vehicle or place, with intent to commit a larceny or felony, whether he succeeds or fails in the perpetration of such larceny or felony, shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one-half years.

It is well established in our precedent -- and the parties do not disagree -- that Mass. Gen. L. ch. 266, § 16 includes conduct that constitutes a crime of violence as well as conduct that does not. See United States v. Dueno, 171 F.3d 3, 5 (1st Cir. 1999) (holding that § 16 "encompasses conduct that constitutes a crime of violence (i.e., breaking into and entering a person's home, see U.S.S.G. § 4B1.2(a)(2) ('burglary of a dwelling' is a crime of violence)), and conduct that almost certainly does not (i.e., breaking into and entering a vehicle . . .)"); Harris, 964 F.2d at 1235 (reading § 16 in similar fashion in context of "violent felony"). Because the statutory definition does not resolve the question of whether the conviction was for a crime of violence, the sentencing court had to look elsewhere, beyond the statute, in accordance with the approach set forth in Taylor and our subsequent precedent. Based upon the original complaint containing the charge of Home Invasion in violation of Mass. Gen. L. ch. 265, § 18C, and the police report underlying the April 1999 conviction, the district court concluded at the sentencing hearing, pursuant to the preponderance of the evidence standard,[7] that Delgado pled guilty to breaking into and entering a dwelling, and therefore that the April 1999 conviction

---

[7] The "preponderance of the evidence" standard generally applies when a court must make factual determinations which control whether a defendant qualifies for an enhancement under the career offender guidelines. See Shepard, 231 F.3d at 68; U.S.S.G. § 4B1.1.

-9-

was for a crime of violence under § 4B1.1. The court specifically stated:

> And it is my determination that the amendment to a breaking and entering in the nighttime with intent to commit a felony must be interpreted in the - by looking at the entire picture, including the original criminal complaint in which this defendant was charged with knowingly entering and remaining in the dwelling place of another. And I have considered the police report. It may not be entirely reliable in all of its aspects. But with respect to where the crime was committed, I think it is entirely reliable, and I believe that the statements that are made in that report lead me to believe that the conviction of which Mr. Delgado - or to which Mr. Delgado pled guilty was a crime of violence, therefore, a second predicate, and he will be determined to be a career offender under the guideline provisions.

Delgado argues that it was error for the district court to rely on these documents -- namely, the original complaint and the police report -- in determining whether the April 1999 conviction was a crime of violence.

> The original complaint alleging Home Invasion states that
>
> on 12/05/98, [Delgado] did knowingly enter, or enter and remain in, the dwelling place of another, knowing or having reason to know that one or more persons were present within and: (1) did so while armed with a dangerous weapon, or (2) did use force or threaten the imminent use of force upon a person within such dwelling . . . .

Because the amended charge to which Delgado pled guilty supercedes the original complaint, we have reservations about the appropriateness of the trial court giving the original complaint any further consideration in determining the meaning of Delgado's plea on the crime of violence issue. We do not have to decide that

-10-

issue, however.  Even assuming that the district court's reliance on the original complaint was improper, such error was harmless because the police report alone was sufficient to justify the district court's ruling that the defendant had pled guilty to a crime of violence.

The "crime of violence" determination required the district court to focus on a simple question framed by the breaking and entering charge to which Delgado pled guilty under Mass. Gen. L. ch. 266, § 16.  Section 16 criminalizes, inter alia, breaking and entering "a building, ship, vessel or vehicle, with intent to commit a felony."  Mass. Gen. L. ch. 266, § 16.  Given the inclusion of "burglary of a dwelling" as a crime of violence under § 4B1.2, the court only had to decide if the government had presented sufficiently reliable evidence to permit it to conclude, by a preponderance of the evidence, that Delgado's plea to the § 16 charge constituted an admission to breaking and entering a dwelling, instead of a "ship, vessel or vehicle."  Id.  The police report, appended to the Pre-Sentence Report, includes numerous references to a dwelling and the details characteristic of a dwelling:

> On 12/05/98, . . . [three officers] were dispatched to the area of 103 Spruce Street for a 911 call of a[n] unknown problem.  I arrived at the scene and spoke with . . . victim . . . Ruby Cartagena.  Cartagena [said] that she was babysitting for her sister a[n] Esmeralda Cartagena at the address of 16 Temple Street.  Cartagena stated that . . . while she was in the apartment babysitting she received a phone call and once she picked up the phone who ever was on the other end hung up the phone. . . .  Cartagena then went into one of the bedrooms

-11-

and while in the bedroom she heard the front door open she proceeded to the front door and once she entered the living room all of a sudden a cloth was put over her face and someone grabbed Cartagena and told her not to yell or they [would] hurt her. . . . Car[t]agena then observed the suspect #2 proceed to where the kitchen was and suspect #3 go into the bedroom where the children were, su[s]pect #1 stayed with Cartagena holding her and after approximately a minute or two suspect #1 placed Cartagena into the bathroom and shut the door on her while still holding the bathroom door shut. Cartagena then heard the suspects leave the [apartment] and she ran out of the bathroom and proceeded to the window. Cartagena then observed a grey [motor vehicle] leaving the front of the house of 16 Temple St.

Focusing on the narrow issue before it, the district court sensibly observed that the police report "may not be entirely reliable in all of its aspects," but "is entirely reliable" as to "where the crime was committed." The court thus concluded that the crime "to which Mr. Delgado pled guilty was a crime of violence."

Other than a general objection to reliance on the police report, Delgado offered nothing about the circumstances of the plea hearing or the creation of the police report to challenge the sentencing court's conclusion that Delgado and the government both believed that he was entering a guilty plea to the "generically violent crime" of breaking and entering a dwelling.[8] Harris, 964

---

[8] To dispel any inference that the building that is the object of the breaking and entering must be a dwelling to qualify as a "crime of violence" under the career offender guidelines, we note that, while § 4B1.2(a)(2) explicitly enumerates "burglary of a dwelling" as a sample offense in defining the term "crime of violence," we have held that breaking and entering a commercial building also constitutes a crime of violence under the "otherwise" clause of § 4B1.2(a)(2). See United States v. Fiore, 983 F.2d 1, 4 (1st Cir. 1992) (because "burglary of a commercial building poses a potential for episodic violence so substantial as to bring such

-12-

F.2d at 1236. In the absence of such a proffer, we conclude that there was no clear error in the district court's finding that, by a preponderance of the evidence, Delgado pled guilty to the amended charge of breaking and entering a dwelling with intent to commit a felony. See Damon, 127 F.3d at 141 (holding that "factual conclusions of sentencing court, which must be supported by a preponderance of the evidence, are reviewed for clear error").

Delgado gains nothing by arguing that the district court could not rely on an uncertified copy of the police report. Without minimizing the value of providing certified copies of police reports at a sentencing hearing, we note first that Delgado did not object specifically to the court's reliance on an uncertified document. Moreover, certifying a copy of a police report simply attests that the report is a true and accurate copy of the original. Delgado never challenged the accuracy of the copy included in the Pre-Sentence Report, either in the district court or on appeal.

Finally, to the extent that Delgado challenges the police report on hearsay grounds, we reject that argument out of hand. It is well-established that a sentencing court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the

_____

burglaries within the violent felony/crime of violence ambit," state court conviction for conspiracy to commit breaking and entering of commercial building comprises "crime of violence"); see also United States v. Sawyer, 144 F.3d 191, 195-96 (1st Cir. 1998).

information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3. See also United States v. Zuleta-Alvarez, 922 F.2d 33, 36 (1st Cir. 1990) ("The sentencing court is free to rely upon outside evidence, including hearsay evidence that has never been subject to cross-examination.").

## III.

Delgado claims that the district court erred when it failed to depart downward sua sponte on account of his alleged post-offense rehabilitation and the conditions of his pre-sentence confinement. However, Delgado explicitly conceded in his plea agreement that there were no grounds for a departure: "Defendant agree[s] that there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines. Accordingly, . . . Defendant will [not] seek a departure on any ground from the Sentencing Guidelines here." Thus, Delgado has waived his claim for a departure.

Even in the absence of waiver, Delgado's failure to present this claim below constitutes a procedural default curtailing appellate review. See United States v. Piper, 35 F.3d 611, 620 n.6 (1st Cir. 1994) ("It is settled that, in respect to criminal sentencing, as in other contexts, arguments not squarely presented to the sentencing court cannot debut as of right in an appellate venue."). Thus, we decline to consider Delgado's departure claim.

**Affirmed.**

——————————- **Concurring Opinion Follows** -

-14-

**SELYA**, <u>Circuit Judge</u> **(concurring)**.  In virtually all circumstances, newly-constituted panels within a circuit are bound by the holdings of prior panels.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Chhien</u>, 266 F.3d 1, 11 (1st Cir. 2001); <u>United States</u> v. <u>Wogan</u>, 938 F.2d 1446, 1449 (1st Cir. 1991).  Given the force of this rule and its applicability here, I acknowledge that <u>United States</u> v. <u>Shepard</u>, 231 F.3d 56, 66 (1st Cir. 2000), dictates the outcome of this appeal.  I write separately, however, because I believe that <u>Shepard</u>, and cases like it, take impermissible liberties with the narrow exception envisioned in <u>Taylor</u> v. <u>United States</u>, 495 U.S. 575, 602 (1990), and, thus, undermine the integrity of the categorical approach favored by the Supreme Court for cases in which predicate offenses are used to enhance defendants' sentences.  Were we writing on a pristine page, I would hold particularized inquiry of the type and kind approved in the majority opinion (inquiry which ranges well past the charging papers, jury instructions, and other formal accouterments of the predicate offense to a copy of a police report compiled by an investigating officer) to be beyond the limits contemplated by the <u>Taylor</u> Court.  The page, however, is not pristine, and so I reluctantly concur in the judgment of the panel.