**PENNSYLVANIA STATE POLICE, Petitioner,**

v.

**Mark K. McPHERSON, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 4, 2003.
Filed Sept. 8, 2003.

Daniel R.L. McGuire, Harrisburg, for petitioner.

Dennis P. Denard, Warrington, for respondent.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.[1]

The Pennsylvania State Police (PSP) petition for review of the order by the Office of Attorney General (OAG) sustaining the appeal of Mark K. McPherson and directing the PSP to correct McPherson's official criminal history record. Specifically, the order directed the PSP to delete from its report the information that McPherson was subject to a federal gun disability due to a conviction for disorderly conduct stemming from an altercation with his wife. We conclude that the PSP acted appropriately within the scope of its responsibility under the Uniform Firearms Act (UFA), 18 Pa.C.S. §§ 6101—6126 and, therefore, we reverse the OAG's order.

On October 13, 1999, McPherson had a dispute with his ex-wife and criminal charges were filed. McPherson pled guilty to one count of disorderly conduct, a third degree misdemeanor,[2] for which he

---

1. This case was assigned to the author on July 30, 2003.

2. Section 5503(a)(1) of the Pennsylvania Crimes Code states that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he ... engages in fighting or threatening or in violent or tumultuous behavior...." 18 Pa.C.S. § 5503(a)(1). Section 5503(b) provides in

served one-year probation. Thereafter, in October of 2001, McPherson applied to the sheriff of Bucks County for renewal of his permit to carry a firearm, as provided under Section 6109 of the UFA, 18 Pa. C.S. § 6109. On October 16, 2001, the sheriff denied the application based on the PSP's report of McPherson's criminal history record, which included the disorderly conduct conviction. McPherson challenged this report in the manner provided under Section 6111.1(e) of the UFA.[3] Initially, the PSP sustained McPherson's challenge and indicated in a "denial reverse" letter that he could carry a firearm but a few weeks later revoked this decision in a letter stating:

> It has been brought to our attention that your conviction for Disorderly Conduct in 2000 is a prohibiting offense for a License to carry a firearm. Therefore, our letter dated November 9, 2001, reversing your denial for a License to Carry a firearm is hereby rescinded.
>
> Please be advised that the basis for your denial can be found under the [UFA], 18 Pa.C.S. § 6109.

> Your 2000 conviction for Disorderly Conduct is prohibiting because it is a crime of Domestic Violence.

McPherson appealed this determination to the PSP and then to the OAG, which assigned an Administrative Law Judge (ALJ) to conduct a hearing.

At the hearing, McPherson testified regarding the facts underlying the conviction. The PSP contended that McPherson's conviction constituted a "misdemeanor crime of domestic violence" under Section 922(g)(9) of the Federal Gun Control Act of 1968 (GCA, or simply Gun Control Act), 18 U.S.C. § 922(g)(9), and the regulations in 27 C.F.R. § 178.11.[4] The PSP further contended that McPherson is prohibited under the GCA from possessing a firearm, he is not exempt from this disability under Section 6105(g) of the UFA and, therefore, he is precluded from obtaining a license under Section 6109(e)(1)(xiii) of the UFA.

The ALJ found insufficient evidence to support the PSP's determination that McPherson's conviction was for a crime of domestic violence and, therefore, sustained

---

pertinent part that "[a]n offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience...." 18 Pa. C.S. § 5503(b).

3. Section 6111.1(e) of the UFA, pertaining to challenges to the PSP's record report, provides, in pertinent part:

(e) Challenge to records.—Any person who is denied the right to ... possess [or] carry ... a firearm as a result of the procedures established by this section may challenge the accuracy of that person's criminal history ... pursuant to a denial by the instantaneous records check in accordance with procedures established by the [PSP]. The decision resulting from a challenge under this subsection may be appealed to the [OAG] within 30 days of the decision by the [PSP]. The decision of the [OAG] may be appealed to Commonwealth Court....

18 Pa.C.S. § 6111.1(e).

4. The Federal Gun Control Act of 1968 prohibits the sale or disposition of any firearm to a person convicted in any court of a misdemeanor crime of domestic violence, 18 U.S.C. § 922(d)(9), and prohibits a person convicted in any court of a misdemeanor crime of domestic violence from shipping or transporting or receiving any firearm or ammunition, 18 U.S.C. § 922(g)(9). Section 921(a)(23) of the GCA defines "misdemeanor crime of domestic violence," in pertinent part, as "[a]n offense that ... (1) is a misdemeanor under Federal or State law; and ... (ii) has, as an element, the use or attempted use of physical force ... committed by a current or former spouse...." 18 U.S.C. § 921(a)(23)(A). 12 C.F.R. § 178.11 states a nearly identical definition.

the appeal. The ALJ directed the PSP to take such remedial action with respect to correction of McPherson's criminal record maintained in the Central Repository, notify applicable agencies of the correction and provide McPherson with a corrected copy of his criminal record information. The PSP then filed the present petition for review reasserting the arguments made before the ALJ. McPherson contends that his conviction does not result in gun disability and, because he was applying for a license to carry a firearm rather than the sale or transfer of a firearm, any duty on the part of the PSP to report federal gun disability under Section 6111 of the UFA is not applicable here.

The decision to issue a license is solely for the sheriff, subject to certain absolute statutory prohibitions. *See* 18 Pa. C.S. § 6109; *Moats v. Pennsylvania State Police*, 782 A.2d 1102, 1104 (Pa.Cmwlth. 2001). However, while the sheriff has sole discretionary authority, under the statutory scheme established with the 1995 amendments to the UFA, which added the provision for PSP reports of criminal history, the PSP has a mandatory role in the investigation which the sheriff must undertake. This scheme of investigation and reporting on the part of the PSP establishes a more rigorous process as a prerequisite to obtaining a gun license and deprives the sheriff of some of the exclusive investigatory power and discretion he had prior to 1995.

Pursuant to Section 6109 of the UFA, a gun license must be obtained from the sheriff in the county where the applicant resides. In determining whether to issue a license, Section 6109(d) directs the sheriff, as follows:

> The sheriff to whom the application is made shall investigate the applicant's record of criminal convictions, shall investigate whether or not the applicant is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year, shall investigate whether the applicant's character and reputation are such that the applicant will not be likely to act in a manner dangerous to the public safety and shall investigate whether the applicant would be precluded from receiving a license under subsection (e)(1) or section 6105(h) (relating to persons not to possess, use, manufacture, control, sell or transfer firearms) and *shall conduct a criminal background, juvenile delinquency or mental health check following the procedures set forth in section 6111 (relating to firearm ownership).*

18 Pa.C.S. § 6109(d) (emphasis added). Based on the investigation directed under Section 6109(d), the sheriff exercising his sound discretion may issue a license, except in the specific circumstances listed in subsection (e) where a license is prohibited.

With respect to the criminal history record check, Section 6111 specifically assigns investigatory authority to the PSP to determine if a reported misdemeanor conviction involved domestic violence and, therefore, constitutes a gun disability under the Gun Control Act. Section 6111 provides, in pertinent part, as follows:

> For purposes of the enforcement of 18 United States Code § 922(d)(9), (g)(1) and (s)(1) (relating to unlawful acts), in the event the criminal history or juvenile delinquency background check indicates a conviction for a misdemeanor that the Pennsylvania State Police cannot determine is or is not related to an act of domestic violence, the Pennsylvania State Police shall issue a temporary delay of the approval or transfer. During the temporary delay, the Pennsylvania State Police shall conduct a review or investigation of the conviction with

courts, local police departments, district attorneys and other law enforcement or related institutions as necessary to determine whether or not the misdemeanor conviction involved an act of domestic violence.

18 Pa.C.S. § 6111(b)(7). In addition to this specific direction in Section 6111(b)(7) to investigate whether a gun license applicant has a prior conviction based on an act of domestic violence, the PSP is charged in Section 6111.1 with the general duty to determine and report "if the potential purchaser or transferee is prohibited from receipt or possession of a firearm under Federal or State law ..." 18 Pa.C.S. § 6111.1(b)(1)(i) and (iii).[5]

Prior to the 1995 amendments to Sections 6109 and 6111, the issuance of a gun license was a less complicated affair left entirely to the sheriff's discretion. From 1972 until 1988, Section 6109 authorized the sheriff to issue a gun license, as follows:

(a) Issue of license.—The chief or head of any police force or police department of a city, and elsewhere, the sheriff of a county, may, upon the application of any person, issue a license to such person to carry a firearm in a vehicle or concealed on or about his person within this Commonwealth for not more than five years from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a firearm, and that he is a suitable person to be so licensed.

18 Pa.C.S. § 6109 (1988) (as amended in 1986, changing the license term from one to five years). This version of Section 6109 clearly provides no authority to the PSP to investigate the applicant and, pursuant to this version, our court in *Gardner v. Jenkins,* 116 Pa.Cmwlth. 107, 541 A.2d 406, 409 (1988) appropriately ruled that "the sheriff has investigatory powers to determine both need and fitness" of a gun license applicant.[6]

In December of 1988, Section 6109 was substantially amended to include the requirement that the sheriff conduct a more extensive investigation and to absolutely prohibit the issuance of a license to certain persons. After the 1988 amendments, Section 6109(d) directed the sheriff to investigate the applicant's background, as follows:

(d) Sheriff to conduct investigation.— The sheriff to whom the application is made shall investigate the applicant's record of criminal convictions, shall investigate whether or not the applicant is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year, shall investigate whether the applicant's charac-

---

**5.** The duty of the PSP is described in Section 6111.1 as follows:

(b) **Duty of Pennsylvania State Police.**—
(1) Upon receipt of a request for a criminal history, juvenile delinquency history and mental health record check of the potential purchaser or transferee, the Pennsylvania State Police shall immediately during the licensee's call or by return call forthwith:
(i) review the Pennsylvania State Police criminal history and fingerprint records to determine if the potential purchaser or transferee is prohibited from receipt or pos-

session of a firearm under Federal or State law;
. . . .
(iii) inform the licensee making the inquiry either:
(A) that the potential purchase or transfer is prohibited; or
(B) provide the licensee with a unique approval number.
18 Pa.C.S. § 6111.1(b).

**6.** *Gardner v. Jenkins* and *Commonwealth v. Butler,* 189 Pa.Super. 399, 150 A.2d 172 (1959), have been superceded by the current legislative scheme.

ter and reputation are such that the applicant will not be likely to act in a manner dangerous to public safety and shall investigate whether the applicant would be precluded from receiving a license under subsection (e)(1).

18 Pa.C.S. § 6109 (1990). While this provision called for a greater investigation of the applicant, the investigation did not call for any involvement on the part of the PSP. In particular, this version of Section 6109(d) does not direct the sheriff, as the current version does, to follow the procedures for obtaining a report from the PSP that are now set forth in Section 6111. Indeed, prior to being entirely rewritten in 1995, Section 6111 did not call, as it does now, for an instantaneous records check by the PSP prior to the sale or transfer of a firearm [7] and Section 6111.1, detailing the duties of the PSP to determine and report firearm disability under federal and state law, had not yet been enacted.

Under the present regulatory scheme, however, the sheriff no longer conducts the sole investigation into the criminal background of a gun license applicant. Rather, the UFA conferred upon the PSP the authority and the duty to determine whether McPherson's misdemeanor conviction involved acts of domestic violence and, after finding that it did involve such acts, to report the presence of a federal gun disability under 18 U.S.C. § 922(g)(9). Nevertheless, McPherson contends that even if PSP had such authority, it erred in reporting his conviction in 2000 for disorderly conduct as a misdemeanor crime of domestic violence. In this challenge to the accuracy of the PSP's report of McPherson's criminal history record information, PSP bears the burden to prove the accuracy of the record.[8] In order to prevail in McPherson's challenge, the PSP had to show that its investigation of the conviction pursuant to Section

---

7. Prior to 1995, Section 6111 provided:

   Sale of firearms

   (a) Time and manner of delivery.—No seller shall deliver a firearm to the purchaser thereof until 48 hours shall have elapsed from the time of the application for the purchase thereof, and when delivered, said firearm shall be securely wrapped and shall be unloaded.

   (b) Statement to be signed by purchaser.—At the time of applying for the purchase of a firearm, the purchaser shall sign in quadruplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, length of barrel, make, model, and manufacturer's number of the firearm to be purchased, and a statement that he has never been convicted in this Commonwealth, or elsewhere, of a crime of violence. The seller shall, within six hours after such application, sign and attach his address and forward by registered or certified mail one copy of such statement to the chief or head of the police force or police department of the city, or the sheriff of the county of the place of

business of the seller, the duplicate, duly signed by the seller, shall, within seven days, be sent by him, with his address, to the Commissioner of the Pennsylvania State Police, the triplicate he shall retain for six years, and the quadruplicate with the proper signature and address of the seller shall, within six hours after such application, be forwarded by registered or certified mail to the chief or head of the police force or police department of the city or to the sheriff of the county of which the buyer is a resident.

   (c) Exemption.—This section shall not apply to sales at wholesale.

   18 Pa.C.S. § 6111 (1988).

8. The notice mailed to McPherson informing him of his right to dispute the accuracy of the PSP's report states that while McPherson's appeal is based on Section 6111.1(e) of the UFA, 18 Pa.C.S. § 6111.1(e), the applicable administrative procedures are those established under Section 9152 of Criminal History Record Information Act (CHRIA), 18 Pa.C.S. § 9152. Pursuant thereto, the PSP bears the burden to show the accuracy of the information reported. *See also* 37 Pa.Code § 195.5.

6111(b)(7) demonstrated that McPherson was convicted of a "misdemeanor crime of domestic violence." Under Section 921(a)(33) of the Gun Control Act, a "misdemeanor crime of domestic violence" is an offense that "has, as an element, the use or attempted use of physical force ... committed against a current or former spouse...." 18 U.S.C. § 921(a)(33). In the present case, it is undisputed that McPherson's conviction is based on a physical altercation with his wife. Thus, the requisite relationship status between McPherson and victim is established.[9] The real crux of McPherson's argument focuses on the particular provision in Pennsylvania's disorderly conduct statute to which McPherson pled guilty and whether the conduct for which he was charged encompasses the use or attempted use of physical force.

■ In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) and its progeny, the federal courts have constructed an analytical framework for determining whether a particular state conviction suffices as a predicate offense under a federal statute like the Gun Control Act.[10] Under the *Taylor* approach, the court must first examine the federal stat-

ute to determine the elements necessary for a state crime to qualify as a predicate offense.[11] Next, the court must examine the state conviction at issue to determine whether it contains those necessary elements. If it does, the federal statute is triggered; if it does not, the federal statute does not apply. In this regard, the proper analysis is "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600, 110 S.Ct. 2143.

■ Nonetheless, where the statutory definition of the prior offense describes both conduct which includes the required elements and conduct which does or may not, the court may look to documents in the state court record to determine whether the conviction necessarily encompassed them. As the court explained:

For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government

9. As the Eighth Circuit noted in *United States v. Smith*, 171 F.3d 617 (8th Cir.1999), "In recognizing that domestic violence-related crimes often involve crimes which are not necessarily so designated, Congress evinced its intent that the predicate offense need not contain a domestic relationship as an element. Thus, while [the GCA] requires proof of a domestic relationship, it requires the predicate misdemeanor to have only one element: the use or attempted use of physical force ..." *Id.* at 620. *Accord United States v. Meade*, 175 F.3d 215 (1st Cir.1999).

10. *Taylor* dealt with the sentencing enhancement provisions of subtitle I (the Career Criminals Amendment Act of 1986) of the Anti–Drug Abuse Act of 1986, 18 U.S.C. § 924(e), but the *Taylor* paradigm logically

applies to any federal statute the provisions of which are triggered by conviction of predicate offenses under state law. It has specifically been applied in cases involving criminal prosecutions under the Gun Control Act. *See Smith.* *See also United States v. Nason*, 269 F.3d 10 (1st Cir.2001); *Meade.*

11. In *Taylor*, this may have been the most troublesome aspect of the case, as the court had to determine whether Congress intended the undefined term "burglary" to mean any crime designated as burglary under state law or, instead, some generic offense of burglary which would be the same in all states. Here, however, the federal statute specifically enumerates the elements which must be included in the predicate offense.

should be allowed to use the conviction for enhancement.

*Id.* at 602, 110 S.Ct. 2143. Thus, in *United States v. Smith,* 171 F.3d 617 (8th Cir. 1999), because the state court complaint recited that Smith grabbed [the mother of his child] "by the throat, and did also push her down" the federal court determined that Smith had been convicted of that portion of the Iowa assault statute which involved the use or attempted use of force within the meaning of the Gun Control Act. *Id.* at 621. *See also United States v. Einfeldt,* 138 F.3d 373, 378 (8th Cir.1998). In *United States v. Shepard,* 231 F.3d 56 (1st Cir.2000), the court went beyond the charging documents to any "reliable evidence [in the state court record] that would permit [the federal court] to conclude that the defendant's guilty plea to a prior offense constituted an admission" to the elements required of a predicate crime. *Id.* at 68. The court emphasized, however, as had the court in *Taylor,* that the court may not inquire into the actual conduct which provoked the state court criminal charges in the first place. Rather, the court is only concerned with determining whether the guilty plea constituted an admission to [or whether a conviction was a conviction for] that portion of the state statute which includes the necessary predicate elements. *Id.* at 68–70, citing *Taylor,* 495 U.S. at 601–02, 110 S.Ct. 2143.

Thus to determine whether McPherson's misdemeanor conviction constitutes a predicate offense for purposes of the Federal gun disability imposed by 18 U.S.C. § 922(g)(9), we must first look to the statutory definition of the offense to which McPherson pled guilty. At the hearing before the ALJ, the PSP submitted a certified copy of the criminal complaint charging McPherson with five counts—two counts of simple assault, two counts of disorderly conduct and one count of harassment. He pled guilty to the third

count, charging him with violating 18 Pa. C.S. § 5503(1), after the Commonwealth agreed to reduce the grade from misdemeanor 2 to misdemeanor 3 and the remaining counts were *nol prossed.* A person is guilty of disorderly conduct under 18 Pa.C.S. § 5503(a)(1) "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or violent or tumultuous behavior...." Undoubtedly, both "fighting" and "violent behavior" include as a necessary element the use or attempted use of physical force. Even if we were to assume, arguendo, that "threatening" and "tumultuous behavior" may not involve physical force, count three, to which McPherson pled guilty, charged that he "did push or shove Susan McPherson to the ground." This evidence clearly supports the conclusion that McPherson pled guilty to a portion of the statute which includes the use of physical force as an element.

After McPherson's appeal to this court, the ALJ issued an opinion urging reversal of his order. He opined:

> After further review of that order, and prior to filing of this opinion, [I] have determined that the appropriate decision should have been to sustain the ruling of the PSP (Petitioner). The order that was originally entered failed to consider the guilty plea of [McPherson] and the application of the GCA and UFA to the circumstances surrounding that plea.

ALJ op. at 8. For the reasons stated above, we agree with his conclusion that the disorderly conduct charge to which McPherson entered a guilty plea involved behavior that the PSP properly reported as a misdemeanor crime of domestic violence under the federal definition.

Accordingly, as the ALJ urged in his opinion, we reverse his order directing

that the PSP amend the criminal history record.

### ORDER

AND NOW, this 8th day of September, 2003, the order of the Administrative Law Judge for the Office of the Attorney General in the above captioned matter is hereby REVERSED.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

Section 6109(d) of the Uniform Firearms Act (UFA) provides, in pertinent part:

**(d) Sheriff to conduct investigation.—** The sheriff to whom the application is made shall investigate the applicant's record of criminal convictions ... and shall conduct a criminal background ... check following the procedures set forth in section 6111 (relating to firearm ownership).

18 Pa.C.S. § 6109(d).

In turn, Section 6111(b)(7) of the UFA provides, in pertinent part:

(7) For purposes of the enforcement of [Section 922(g)(9) of the Federal Gun Control Act (GCA)[1]], in the event the criminal history ... background check indicates a conviction for a misdemeanor that the Pennsylvania State Police [(PSP)] cannot determine is or is not related to an act of domestic violence, the [PSP] shall issue a temporary delay of the approval of the purchase or transfer. During the temporary delay, the [PSP] shall conduct a review or investigation of the conviction with courts, local police departments, district attorneys and other law enforcement or related institutions as necessary to determine whether or not the misdemeanor conviction involved an act of domestic violence. The [PSP] shall conduct the review or investigation as expeditiously as possible. No firearm may be transferred by the dealer to the purchaser who is the subject of the investigation during the temporary delay. The [PSP] shall notify the dealer of the termination of the temporary delay and either deny the sale or provide the unique approval number under paragraph (4).

18 Pa.C.S. § 6111(b)(7).

Thus, when an application is submitted to a sheriff, the plain language of Section 6109(d) specifically empowers *the sheriff*: (1) to investigate the applicant's record of criminal convictions; (2) to conduct the background check outlined in Section 6111 of the UFA; and, therefore, (3) to determine whether or not these convictions preclude the applicant from obtaining the license to carry a firearm pursuant to Section 922(g)(9) of the GCA.[2] The Majority's conclusion to the contrary renders the ex-

---

**1.** 18 U.S.C. § 922(g)(9). Section 922(g)(9) provides, in pertinent part, that "[i]t shall be unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence, to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." In turn, Section 921(a)(33) defines "misdemeanor crime of domestic violence", in pertinent part, as "[a]n offense that ... (i) is a misdemeanor under Federal or State law; and ... (ii) has, as an element, the use or attempted use of physical force ... committed by a current or former spouse ..." 18 U.S.C. § 921(a)(33)(A).

**2.** *See, e.g., Smith v. Nace,* 824 A.2d 416, 419 (Pa.Cmwlth.2003) ("[A] review of *Gardner [v. Jenkins,* 116 Pa.Cmwlth. 107, 541 A.2d 406, *petition for allowance of appeal denied,* 520 Pa. 620, 554 A.2d 511 (1988)] and *Tsokas [v. Board of Licenses and Inspections Review,* 777 A.2d 1197 (Pa.Cmwlth.2001)] discloses that it is for the sheriff to determine the fitness of an individual to carry weapons. Each case is decided on its own facts and there is no fixed

plicit provisions of Section 6109(d) meaningless, in derogation of the basic tenets of statutory construction.[3]

Based on the explicit provisions of the UFA, I firmly believe that it was for the Sheriff of Bucks County, and the Sheriff alone, to conduct the investigation into McPherson's background and criminal record, and to determine whether or not there was a statutory disability which precludes him from possessing a firearm. The only role that the PSP played in this application process was to forward McPherson's criminal history record maintained in the PSP's central repository, as defined in the Section 9102 of the Criminal History Record Information Act (CHRIA)[4], to the Sheriff for his consideration.

Pursuant to the provisions of the CHRIA, McPherson's criminal history record in the PSP's central repository should only consist of all "[i]dentifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions aris-

ing therefrom …"[5] My review of the certified record in this case reveals that McPherson's criminal history record, maintained by the PSP in its central repository, contains information in addition to the foregoing items. Specifically, McPherson's criminal history record also contains a notation relating to the purported federal disability involving "misdemeanor crime of domestic violence" under Section 922(g)(9) of the GCA. *See* Appendix G of the certified record. As the ALJ's order in this case properly directs the PSP to remove this information from McPherson's criminal history record, to notify applicable agencies of this correction, and to furnish a corrected criminal record history to McPherson, the ALJ's order should be affirmed

Accordingly, unlike the Majority, I would affirm the ALJ's order in this case.

---

rule to determine fitness. *Gardner*, 541 A.2d at 409. 'Clearly the legislature intended to confer discretion upon police chiefs or sheriffs to determine whether an applicant should be licensed, and this principle applies with equal force to a determination of good cause for the revocation of a license granted under the [UFA].' *Tsokas*, 777 A.2d at 1202.").

3. *See, e.g., Galloway v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 756 A.2d 1209, 1213 (Pa.Cmwlth.2000) ("[W]hen interpreting a statute, a court must ascertain and effectuate the intent of the legislature and give full effect to each provision of the statute if at all possible. Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words. Further, when construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections because there is a presumption that in drafting the statute, the General Assembly intended the entire statute to be effective.") (citations omitted).

4. 18 Pa.C.S. § 9102. Section 9102 defines "Central repository" as "[t]he central location for the collection, compilation, maintenance and dissemination of criminal history record information by the [PSP]." In turn, Section 9102 defines "criminal history record information" as "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom …"

5. As noted above, Section 9102 of the CHRIA defines "criminal history record information" as "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, *consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom …*" 18 Pa.C.S. § 9102 (emphasis added).