·James C. **WOLAK**, Petitioner

v.

**PENNSYLVANIA STATE POLICE,** Respondent.

Commonwealth Court of Pennsylvania.

Argued Jan. 31, 2006.

Decided Feb. 27, 2006.

Publication Ordered May 9, 2006.

Denise B. Simon, CA, for petitioner.

Tara L. Patterson, Asst. Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION by Judge COHN JUBELIRER.

James C. Wolak (Applicant) appeals the denial of his application for a gun permit

by an Administrative Law Judge (ALJ) of the Office of Attorney General, which was on appeal from the Washington County Sheriff's Office (Sheriff) and the Pennsylvania State Police (PSP). The basis of the denial is Section 922 of the Federal Gun Control Act of 1968(Act), 18 U.S.C. § 922, which precludes a person convicted of a misdemeanor crime of domestic violence from possessing a firearm. For the reasons that follow, we affirm.

On April 4, 2002, at 2:30 a.m., Applicant discharged a shotgun within his house, toward a doorway that was next to the top of a stairwell. Applicant's wife called the police, who came to the scene, took the wife's statement, and recorded it in a written Incident Report (Report). In her statement, the wife indicated that Applicant had recently filed divorce papers and that the estranged couple resided separately within the marital residence. The wife stated that Applicant had fired the weapon at her while she was coming up the steps.

Based on her statement, the police arrested Applicant and filed a criminal complaint (Complaint) charging him with four serious offenses: (1) attempted criminal homicide; (2) aggravated assault–1st degree felony; (3) aggravated assault–2nd degree felony; and (4) reckless endangerment. There is no statement from Applicant.

At Applicant's preliminary hearing on these charges, the district justice dropped all the charges except reckless endangerment.[1] On October 10, 2002, the Court of Common Pleas of Washington County (trial court) conducted a plea and sentencing hearing on the reckless endangerment

---

1. The record does not contain a transcript of this preliminary hearing. It is not entirely clear if Applicant pled guilty or not guilty to the reckless endangerment charge before the district justice.

charge. At the hearing, the Commonwealth made an oral motion to change the reckless endangerment charge to disorderly conduct. By Order dated October 10, 2002 (Order), the trial court granted the motion and accepted Applicant's plea of guilty to disorderly conduct. The trial court convicted Applicant of disorderly conduct, misdemeanor of the third degree, sentenced him to twelve months of probation, and assessed the costs of prosecution to him.

■ In March 2004, Applicant applied to the Sheriff for a license to carry a firearm, pursuant to the Pennsylvania Uniform Firearms Act of 1995(UFA), 18 Pa. C.S. §§ 6101–6126. The Sheriff denied the application because a search of the Pennsylvania Instant Check System (PICS) revealed a disqualifying offense. Applicant appealed the Sheriff's decision to the PSP, which was ultimately denied because of the conviction for disorderly conduct. Applicant then appealed this decision to the Attorney General. At a hearing conducted by an ALJ for the Office of the Attorney General, Applicant testified that he did not fire the weapon at his wife, but that the shotgun accidentally discharged while he was cleaning it. He indicated that he had been cleaning it after having consumed six to eight beers. He testified that his wife came running up the steps, *after* the weapon had discharged, which differed from his wife's statement that she had heard a noise, turned on the lights and then started up the stairs *before* it was discharged. The ALJ denied Applicant's appeal, concluding that:

> While no one suffered physical harm on that occasion [by the shotgun discharge] there is sufficient evidence presented to

conclude that the actions of the Appellant certainly had the effect(s) set forth in the elements of the disorderly conduct charge 18 Pa.C.S.A. § 5503[a](1) and (4). These elements, taken together with the discharge of the shotgun, in an already tense environment, lead to no other conclusion but that a crime of domestic violence has been perpetrated on the victim, Bonnie Wolak.

(ALJ Decision at 10.) Applicant appeals from this decision.[2]

■ Both parties agree that the analysis in *Pa. State Police v. McPherson*, 831 A.2d 800 (Pa.Cmwlth.2003) provides the appropriate means for addressing the arguments before us. To aid in understanding the arguments before this Court, we first set forth the standard and analysis from *McPherson:*

> In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) and its progeny, the federal courts have constructed an analytical framework for determining whether a particular state conviction suffices as a predicate offense under a federal statute like the Gun Control Act. Under the *Taylor* approach, the court must first examine the federal statute to determine the elements necessary for a state crime to qualify as a predicate offense. Next, the court must examine the state conviction at issue to determine whether it contains those necessary elements. If it does, the federal statute is triggered; if it does not, the federal statute does not apply. In this regard, the proper analysis is "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convic-

---

**2.** "Our scope of review is limited to a determination of whether necessary findings are supported by substantial evidence, an error of law was committed or whether constitutional rights were violated." *Pa. State Police v. Viall*, 774 A.2d 1288, 1290 n. 4 (Pa.Cmwlth. 2001).

tions." *Id.* at 600, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607.

Nonetheless, where the statutory definition of the prior offense describes both conduct which includes the required elements and conduct which does or may not, the court may look to documents in the state court record to determine whether the conviction necessarily encompassed them.

*McPherson,* 831 A.2d at 806 (footnotes omitted).

The Act defines "misdemeanor crime of domestic violence" as one which:

(i) is a misdemeanor under Federal, State, or Tribal law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse....

18 U.S.C. § 921(a)(33)(A); *see also* 27 C.F.R. § 478.11 (providing a similar definition, but going into greater detail as to what constitutes a misdemeanor in states that, unlike Pennsylvania, do not classify offenses as misdemeanors).

Under *McPherson,* we must compare these elements with those of the state conviction to determine if the state conviction contains the necessary elements. In this case, Applicant pled guilty to disorderly conduct, found at 18 Pa.C.S. § 5503, which provides that:

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

(b) **Grading.**—An offense under this section is a misdemeanor of the third degree· if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

18 Pa.C.S. § 5503. In this case, the record does not disclose to which subsection Applicant pled guilty. Although disorderly conduct has components that could fit within the federal definition of a crime of domestic violence (i.e., subparagraphs (a)(1) and (4)), it also has components that do not (i.e., subparagraphs (a)(2) and (3)). Accordingly, under *McPherson,* we may "look to documents in the state court record to determine whether the conviction necessarily encompassed them." 831 A.2d at 806.

Turning to the arguments raised before us, Applicant argues that PSP cannot establish in the record that the conduct resulting in the disorderly conduct charge contains an element required by the Federal law, specifically, that he "use[d] ... or attempted [to] use ... physical force." 18 U.S.C. § 921(a)(33)(A)(ii). Applicant argues that the district justice dropped all attempted homicide and aggravated assault charges "because the facts and evidence revealed that [Applicant] did not fire his weapon in the direction of his wife, but may have been reckless in allowing the weapon to discharge." (Applicant Br. at 7.)[3] In response, PSP argues that each of

---

**3.** Applicant also argues that the Act authorizes the Attorney General to grant relief from

disabilities established by the Act:

the elements of a misdemeanor crime of domestic violence, as defined in the Act, is satisfied. We agree with PSP.

In a challenge to the accuracy of the criminal history record information, PSP bears the burden to prove the accuracy of the record. *McPherson,* 831 A.2d at 805. In *McPherson,* we relied on a certified copy of the criminal complaint provided by PSP to decide if the applicant's conviction, following a plea of guilty for disorderly conduct, constituted a misdemeanor crime of domestic violence under the Federal Act. In concluding that it did, we looked to the factual averments in the complaint as they related to the disorderly conduct charge. As in *McPherson,* the averments in the Complaint (and, in this case, the Information as well) are that Applicant discharged a firearm toward his estranged spouse.[4]

In this case, the documents from the state court record consist of: (1) a document titled "Guilty Plea—Explanation of Defendant's Rights" (Guilty Plea Collo-

quy); (2) a transcript of guilty plea hearing and sentencing (Transcript) conducted on October 10, 2002; (3) the Order; (4) a Transcript of the Docket dated April 23, 2002; (5) the Incident Report (Report); (6) the Complaint; and (7) the Undated Information (Information) from Washington County District Attorney. Of these documents, only the Report and the Complaint discuss the facts underlying the charges. The facts in both these documents are derived entirely from Applicant's wife's statement, which she gave the police at the time of the incident. The Information lists one factual averment in support of the charge of "recklessly endangering another person", specifically that Applicant did "discharge a firearm in the direction of [his estranged wife] Bonnie Wolak."

The Guilty Plea Colloquy, the Transcript and the Order do not contain any facts. It appears these documents rely on the factual averments of the Complaint and the Information. Both the Transcript, at page two, and the Order indicate that the charge of reckless endangerment was

---

if it is established to the [United States Attorney General's] satisfaction *that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.*
18 U.S.C. § 925(c)(emphasis added). Applicant argues that he falls within these requirements as evidenced by the dropping of charges and by his moving back into the marital residence following the incident. This argument seems misplaced before this Court. The language of the Act relied on by Applicant provides a means for relief from the Act that may be raised by petitioning the *United States* Attorney General, not the Commonwealth Attorney General. Additionally, it appears that the United States Attorney General has delegated review of Section 925(c) petitions to the Bureau of Alcohol Tobacco and Firearms (ATF). *See generally, Black v. Snow,* 272 F.Supp.2d 21 (DC.Cir.2003) (indicating that these responsibilities were delegat-

ed by 28 C.F.R. § 0.130(a)(1)), *aff'd,* 110 Fed. Appx. 130 (D.C.Cir.2004). While it is unclear if review of a Section 925(c) petition lies with the United States Attorney General or ATF, it is clear that such review is not properly before the Commonwealth Attorney General or this Court. Accordingly, we do not address any Section 925(c) arguments that are more correctly raised before the appropriate Federal authority.

4. The Complaint averred that:

[Applicant's Wife] Bonnie [Wolak] heard a commotion upstairs and started up the stairs to investigate. Bonnie turned on the light for the stairs and got two to three steps from where her head would have been visible in an opening at the top of the stairs when a shot rang out. Bonnie continued up the last few stairs and looked and saw [Applicant] kneeling across the bed with a shotgun pointed at her, she turned and ran down the stairs and called 911.
(Compl. at 4.)

changed to disorderly conduct. There is nothing indicating that the underlying factual averments in the Complaint and Information were modified.

The Complaint was amended by the trial court's granting of the Commonwealth's oral motion to replace the reckless endangerment charge with disorderly conduct. Nothing in the record indicates that the averments in the Complaint (or the Information) were, themselves, modified—only that the charge itself was changed. Thus, the averments made in support of the reckless endangerment charge became the operative averments in support of the disorderly conduct charge. The plea was made with respect to the averments in the Complaint. These averments support the ALJ's conclusion.[5] Accordingly, we find no error in the ALJ's decision.

For these reasons, we deny Applicant's appeal and affirm the order of the ALJ for the Office of the Attorney General.

### ORDER

NOW, February 27, 2006, the order of the Administrative Law Judge for the Office of the Attorney General in the above-captioned matter is hereby AFFIRMED.

---

**5.** While we note that Applicant's argument is not unreasonable—that it can be inferred by the dropping of the more serious offenses, and even by the dropping of the reckless endangerment charge, that there were no facts establishing an intent to harm his wife— we also note that the record shows that his guilty plea was premised on the factual averment that he fired the weapon in the direction of his wife. In the within case, Applicant acknowledged before the ALJ, on cross-examination, that he had pled guilty to firing a weapon toward his wife:

Q: *You don't dispute the fact you entered a guilty plea?*
A: No, I do not.
Q: *And you don't dispute the fact that the act that led to you ultimately having to enter the guilty plea relates back to the shotgun going off?*
A: I don't dispute nothing about it. I just couldn't afford to go a step further.

(ALJ Tr. at 34–35.) Additionally, on direct examination, Applicant acknowledged that he pled guilty to the averment contained in the Information.

Q: Did you fire it in her direction?
A: No.
Q: But you pled to this?
A: Yes, on the advice of [his attorney in the criminal proceeding, who was different than his attorney before the ALJ].

(ALJ Tr. at 27.) Thus, Applicant is not challenging the accuracy of the record, but is offering what seemingly amounts to a collateral challenge to his own guilty plea, based on the ineffectiveness of his criminal trial counsel. Such an argument is not appropriately before us in this proceeding. Per *McPherson,* PSP has met its burden as to the accuracy of the record, and the record establishes that Applicant pled guilty to disorderly conduct premised on his firing a weapon in the direction of his wife.