J-S55017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OSCAR R. SASSE, JR. | : | |
| | : | |
| Appellant | : | No. 269 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 10, 2018
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0000376-2018

BEFORE: MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED JANUARY 15, 2020**

Oscar R. Sasse, Jr. appeals from the judgment of sentence entered following his jury trial convictions for attempt to make a false statement in connection with the purchase or sale of a firearm and unsworn falsification to authorities.[1] Sasse argues the trial court erred in denying his motion *in limine* to preclude the use of a prior conviction for disorderly conduct. He also claims the convictions are infirm because the Commonwealth presented insufficient evidence to support a finding that he acted knowingly or intentionally or that he made a statement he did not believe to be true. We affirm.

In 2009, Sasse pled guilty to two counts of disorderly conduct ("disorderly conduct conviction"). In January 2015, in a separate matter, a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 907, 6111(g)(4)(ii), and 4904(b), respectively.

court granted a petition for a protection from abuse order ("PFA") against Sasse and prohibited Sasse from, among other things, possessing or acquiring firearms for a period of three years, until January 2018.

In May 2017, Sasse attempted to purchase a handgun from Sportsman Supply in Summit Township in Butler County, Pennsylvania. Sasse completed Pennsylvania State Police Application/Record of Sale ("PSP form") and E-Form 4473 from the United States Department of Alcohol, Tobacco, and Firearms ("ATF form").

Sasse marked "no" in response to the question on the ATF form that asked whether he was subject to an active PFA order: "Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner?" ATF Form, 11.h. The form defined "Qualifying Restraining Orders" as:

> Under 18 U.S.C. 922 firearms may not be sold to or received by persons subject to a court order that: (A) was issued after a hearing which the person received actual notice of and had an opportunity to participate in; (B) retrains such person from harassing, stalking, or threatening an intimate partner or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury. An "intimate partner" of a person is: the spouse or former spouse of the person, the parent of a child of the person, or an individual who cohabitates or has cohabitated with the person.

ATF Form at 5.

Sasse also marked "no" in response to the ATF form question that asked whether he had "ever been convicted in any court of a misdemeanor crime of domestic violence[.]" *Id.* at 11.i (emphasis removed). The question informed those completing the form to "[s]ee Instructions for Question 11.1." *Id.* (italics removed). Those instructions defined "misdemeanor crime of domestic violence" as:

> A Federal, State, local, or tribal offense that is a misdemeanor under Federal, State, or tribal law and has as an element the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent or guardian of the victim. The term includes all misdemeanors that have as an element the use or attempted use of physical force or the threatened use of a deadly weapon (*e.g. assault and battery*), if the offense is committed by one of the defined parties. (*See Exception to 11.b-12*.) A person who has been convicted of a misdemeanor crime of domestic violence also is not prohibited unless (1) the person was represented by a lawyer or gave up the right to a lawyer; or (2) if the person was entitled to a jury, was tried by a jury, or gave up the right to a jury trial. Persons subject to this exception should answer "no" to 11.1.

ATF Form, Instructions.

On the PSP form, Sasse responded "no" to question 31, which asked, "Have you ever been convicted of a crime enumerated in Section 6105(b), or do any of the conditions under 6105(c) apply to you?" PSP form at A.1. The question informed those completing the form to "read information on back

prior to answering." ***Id.*** (bold and capitalization omitted). The back of the form stated that 18 Pa.C.S.A. § 6105(c) prohibits a person from possessing a firearm if the person is subject to an active PFA or has been convicted of a misdemeanor crime of domestic violence:

> **Section 6105(c):**
>
> Effective November 22, 1995, 18 Pa.C.S. § 6105(c) also prohibits the following persons from possessing, using, controlling, transferring, manufacturing, or obtaining a license to possess, use, control, transfer, or manufacture a firearm in the Commonwealth of Pennsylvania.
>
> **ARE YOU A PERSON WHO:**
>
> . . .
>
> (6) is the subject of an active protection from abuse order issued pursuant to 23 Pa.C.S.A. § 6108 (relating to relief), which order provides for the relinquishment of firearms during the period of time the order is in effect. This prohibition shall terminate upon the expiration or vacation of an active protection from abuse order or portion thereof relating to the relinquishment of firearms; or
>
> . . .
>
> (9) is prohibited from possessing or acquiring a firearm under 18 U.S.C. § 922(g)(9) (relating to unlawful acts) who has been convicted in any court of a misdemeanor crime of domestic violence by a person in any of the following relationships (i) the current or former spouse, parent or guardian of the victim; (ii) a person with whom the victim shares a child in common; (iii) a person cohabits with or has cohabitated with the victim as a spouse, parent, or guardian; or (iv) a person similarly situated to a spouse, parent, or guardian of the victim; then the relationship need not be an element of the offense to meet the requirements of this paragraph.

PSP Form at A.2. Section 922(g)(9) prohibits those "who ha[ve] been convicted in any court of a misdemeanor crime of domestic violence" from possessing a firearm. 18 U.S.C. § 922(g)(9).

Sportsman Supply performed a background check, found Sasse was unable to purchase a firearm, and denied his application. The Pennsylvania State Instant Check System referred the matter to Pennsylvania State Trooper Nathan L. Brown for investigation, who subsequently filed a criminal complaint against Sasse.

Before trial, Sasse filed a motion *in limine* seeking to preclude admission of, among other things, the use of his prior disorderly conduct conviction. Following a hearing, the trial court denied the motion.

At Sasse' jury trial, Trooper Brown testified that he investigated the application forms completed by Sasse. N.T., 10/17/18, at 38. In doing so, he discovered Sasse had an outstanding PFA order, and that he had previously pled guilty to disorderly conduct. *Id.* at 38-39. Trooper Brown testified that he spoke with Sasse, who told him that he thought the PFA had expired and that he did not believe he was convicted of a misdemeanor crime of domestic violence. *Id.* at 40.

Trooper Brown explained to the jury the forms that are completed prior to the purchase of the gun, including the questions outlined above. *Id.* at 43-45. He further testified that the ATF form includes a "certification" signed by the applicant, which states:

I certify that my answers in Section A are true, correct, and complete. I have read and understand the notices, instruction, and definitions on [the ATF Form]. I understand that answering yes to question eleven(a) if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate state and[/]or local law. I understand that a person who answers yes to any of the questions eleven(b) through eleven(i) or twelve(b) through twelve(c) is prohibited from purchasing or receiving a firearm. I understand that a person who answers yes to question twelve(d)(one) is prohibited from receiving or possessing a firearm unless the person answers yes to question(d)(two) and provide the documentation required in eighteen(c). I also understand that making any false oral or written statement or exhibiting any false or misrepresented identification with respect to this transaction is a crime punishable as felony under Federal law and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for purpose of resale for livelihood and profit without a Federal firearms license is a violation of federal law. See instructions for question fourteen.

*Id.* at 45-46. The PSP form contains a similarly-worded "verification," where the applicant "verif[ies] the facts that [he or she] set forth in blocks 5-33 . . . ." PSP Form at no. 34.

Trooper Brown then testified about Sasse's disorderly conduct conviction. He said that in January 2010, the court sentenced Sasse for two convictions for disorderly conduct, graded as misdemeanors of the third degree under 18 Pa.C.S.A. § 5503(a)(1). N.T., 10/17/18, at 52. He stated Section 5503(a) requires proof that the defendant had engaged in "fighting or threatening or in violent or tumultuous behavior." *Id.* at 69. The Commonwealth admitted into evidence the guilty plea and sentencing order

for the disorderly conduct convictions. Trooper Brown testified that the victim in the disorderly conduct conviction was Sasse's former wife. *Id.* at 55.

Trooper Brown also testified regarding the PFA issued against Sasse and the Commonwealth admitted a copy of the PFA into evidence. He testified that the PFA was obtained by Charlene Cook. *Id.* at 56. Trooper Brown testified that the PFA stated that Sasse was provided with reasonable notice and an opportunity to be heard and that the PFA prohibited Sasse from "abus[ing], harass[ing], stalk[ing,] threaten[ing,] or attempt[ing] to use physical force that would cause bodily injury to" Cook. *Id.* at 58. It further evicted Sasse from the residence where Cook lived and prohibited Sasse from having contact with Cook. *Id.* 59. The order further prohibited Sasse from "possessing, transferring or acquiring any firearms for the duration of the order." *Id.* at 60. Trooper Brown testified that the effective date of the PFA was January 13, 2015, and that it would expire on January 13, 2018. *Id.* at 57, 61. He stated Sasse was served with the PFA. *Id.* at 58. Trooper Brown testified that when he interviewed Sasse, Sasse admitted that he filled out the PSP and ATF forms. *Id.* at 62-63.

On cross-examination, Trooper Brown conceded that a conviction for disorderly conduct does not necessarily include domestic violence. *Id.* at 69.

After the Commonwealth rested, Sasse made a motion for acquittal, arguing that the Commonwealth failed to establish Sasse acted with the requisite mental state. *Id.* at 83-84. The trial court denied the motion. *Id.* at 85.

Sasse then testified in his own defense. He said that Cook was the mother of two of his children, and they had been in an "on and off relationship for over ten years." *Id.* at 87. He stated that he believed that the PFA order had restricted him for two years, not three years. *Id.* at 90-91. He said he attempted to purchase the firearm more than two years from the issuance of the PFA. *Id.* at 91. He further testified that he did not believe that his disorderly conduct conviction was a misdemeanor crime involving domestic violence that would disqualify him from possessing a firearm. *Id.* at 92-93.

Sasse testified that Trooper Brown left his contact information with Cook, and asked that Sasse contact him, which Sasse did. *Id.* at 97. He testified that he answered Trooper Brown's questions honestly and did not try to evade any question. *Id.* at 99. He further stated that he did not have any intent to purchase or obtain a firearm through deceit. *Id.* at 99-100.

During cross-examination, Sasse testified that he read the information on the ATF and PSP forms, including the information on the back of the forms. *Id.* at 102. He testified that he had two children with Cook, who was the victim of the disorderly conduct conviction. *Id.* at 107. As to the events that led to the conviction, Sasse agreed that he came home one night, took the blanket off Cook, and asked where her phone was. *Id.* at 112. He followed her to the bathroom, broke the phone, and said, "[I]f you're not going to use it then why have it." *Id.* at 112. Although he did not admit that he hit Cook, he stated that they "were involved in a little bit of altercations where it was mutual

between the both of us. Little combative. Yes, I do admit that." ***Id.*** at 113. He further testified that he and Cook "engaged in fighting" that night. ***Id.*** at 114.

A jury convicted Sasse of attempt to make a false statement in connection with the purchase or sale of a firearm and unsworn falsification to authorities. The trial court sentenced Sasse to 15 to 30 months' incarceration for the criminal attempt conviction and imposed no further penalty for the conviction for unsworn falsification to authorities.

Sasse filed a post-sentence motion, which the trial court denied. Sasse filed a timely Notice of Appeal.

Sasse raises the following issues:

> I. Whether the trial court abused its discretion, or erred as a matter of law, when it denied [Sasse's] pre-trial motion in *limine* excluding any evidence regarding his prior conviction for disorderly conduct used to support the Commonwealth's prosecution?
>
> II. Whether the trial court abused its discretion, or erred as a matter of law, when it denied [Sasse's] trial and post-trial motions for judgment of acquittal and post-sentence motion for a new trial?
>
> III. Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that [Sasse] was guilty of criminal attempt to purchase a firearm and providing unsworn falsification to authorities?

Sasse's Br. at 10 (unnecessary capitalization omitted; italics added). In his second issue, Sasse argues that the court erred in denying the post-sentence motion that challenged the denial of the motion *in limine* and erred in denying his motions for judgment of acquittal, which challenged the sufficiency of the evidence. Because the arguments raised in the second issue overlap with the

arguments raised in the first and third issues, we will not separately address the second issue.

## I. Admission of Evidence

In his first issue, Sasse claims that the trial court erred in denying his motion to preclude the Commonwealth from admitting his disorderly conduct conviction. He argues the conviction did not meet the criteria of a misdemeanor crime of domestic violence. He further claims the conviction was irrelevant and that, if relevant, any probative value was outweighed by the prejudicial effect.

We review a trial court decision regarding the admissibility of evidence for an abuse of discretion. **Commonwealth v. Cox**, 115 A.3d 333, 336 (Pa.Super. 2015) (*en banc*). We will reverse an order admitting evidence only "upon a showing that the trial court abused its discretion." **Id.** (quoting **Commonwealth v. Collins**, 70 A.3d 1245, 1251–1252 (Pa.Super. 2013)). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." **Id.** (quoting **Collins**, 70 A.3d at 1251-52).

### A. Whether Disorderly Conduct Can Be a Disqualifying Offense

Sasse first maintains that the disorderly conduct conviction does not qualify as a misdemeanor crime of domestic violence and therefore was inadmissible.

The ATF form definition of "misdemeanor crime of domestic violence" tracks the definition contained in 18 U.S.C. § 921(33)(A). Further, the PSP

form asks whether the person has been "prohibited from possessing or acquiring a firearm under 18 U.S.C. § 922(g)(9)." PSP Form at A2. Section 922(g)(9) prohibits a person from purchasing a firearm if he or she "has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). The term "misdemeanor crime of domestic violence" is defined as follows:

> [T]he term "misdemeanor crime of domestic violence" means an offense that--
>
> > (i) is a misdemeanor under Federal, State, or Tribal law; and
> >
> > (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(33)(A) (footnote removed). Therefore, a misdemeanor crime of domestic violence includes misdemeanors where an element of the offense is the use or attempted use of physical force, or threatened use of a deadly weapon, and where the victim is, among other things, a current or former spouse, someone who is cohabitating with the defendant, or someone who shares a child with the defendant.

We have not yet considered whether a misdemeanor conviction for disorderly conduct can constitute a misdemeanor crime of domestic violence that would bar the purchase of a firearm. However, the Commonwealth Court

has addressed the issue on several occasions when determining whether the Pennsylvania State Police properly disqualified individuals with disorderly conduct convictions from possessing firearms.

In ***Pennsylvania State Police v. McPherson***, the Commonwealth Court of Pennsylvania addressed whether a conviction for misdemeanor disorderly conduct could constitute a misdemeanor crime of domestic violence.[2] 831 A.2d 800, 801 (Pa.Cmwlth.Ct. 2003). It noted that, under Section 5503(a)(1), a person is guilty of disorderly conduct "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or violent or tumultuous behavior." ***Id.*** at 807 (quoting 18 Pa.C.S.A. § 5503(a)(1)). It concluded that "both 'fighting' and 'violent behavior' include as a necessary element the use or attempted use of physical force." ***Id.*** It then concluded that "[e]ven if we were to assume, arguendo, that 'threatening' and 'tumultuous behavior' may not involve physical force," the crime at issue did involve physical force, as the appellant pled guilty to charges that he "did push or shove [the victim] to the ground." ***Id.*** The court concluded the "evidence clearly support[ed] the conclusion that [the appellant] pled guilty to a portion of the statute which includes the use of physical force as an element," and thus was disqualified under federal law from purchasing a firearm. ***Id.***

---

[2] Although decisions of the Commonwealth Court are not binding upon this Court, "such decisions provide persuasive authority." ***Commonwealth v. Hunt***, --- A.3d ----, 2019 WL 4783495, at *7 n.6 (Pa.Super. Oct. 1, 2019).

Similarly, in **Wolak v. Pennsylvania State Police**, 898 A.2d 1176, 1179 (Pa.Cmwlth.Ct. 2006), the Commonwealth court again determined that a disorderly conduct conviction constituted a misdemeanor crime of domestic violence. It noted that "disorderly conduct has components that could fit within the federal definition of a crime of domestic violence (i.e., subparagraphs (a)(1) and (4)), [and] also has components that do not (i.e., subparagraphs (a)(2) and (3))." **Id.** The court then looked to the documents in the record of the underlying conviction to determine whether the appellant's disorderly conduct conviction constituted a misdemeanor crime of domestic violence. **Id.** The court concluded that the factual averments in support of the recklessly endangering another person count, which was changed to a disorderly conduct count, included an averment that the appellant fired a firearm in the direction of his estranged wife. **Id.** at 1180. The court concluded that the administrative law judge did not err in concluding that this conviction disqualified the appellant from possession of a firearm. **Id.** at 1181.

We agree with the reasoning in **McPherson** and **Wolak**, and conclude that a misdemeanor conviction for disorderly conduct may constitute a conviction for a misdemeanor crime of domestic violence. Therefore, such a conviction may stand as a bar to possession of a firearm, if the facts of the conviction establish the individual was convicted of using or attempting to use physical force against, among other individuals, a current or former spouse, someone who is cohabitating with the defendant, or someone who shares a child with the defendant. The court did not err in concluding that a conviction

for disorderly conduct can constitute a misdemeanor crime of domestic violence.

**B. Whether the Trial Court Erred in Admitting the Conviction.**

Sasse claims his prior disorderly conduct conviction was not relevant because "it had no bearing on whether [Sasse] knowingly and intentionally made a false statement or made a written false statement which he did not believe to be true." Sasse's Br. at 19. He claims the prior conviction "relates to whether or not the written statements were in fact false and have no bearing on whether [Sasse] believed them to be false, which is the real issue." *Id.* at 24. He further claims evidence of the prior conviction was "highly prejudicial because it led the jury to believe that [Sasse's] prior conviction of disorderly conduct prohibited him from acquiring a firearm, when that determination had never been previously made." *Id.*

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*) (citing *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008)). Evidence is not admissible unless it is relevant. Pa.R.E. 402. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Tyson*, 119 A.3d at 358 (citing *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002)); *see also* Pa.R.E. 401. A court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

We discern no abuse of discretion in the admission of the prior conviction. Sasse was charged in this case with, among other things, falsely responding that he did not have a misdemeanor conviction for a domestic violence crime. Sasse claims that, even if the conviction constitutes a misdemeanor crime of domestic violence, it was not relevant because the issue was whether Sasse knowingly or intentionally provided false information. Whether Sasse actually had a prior conviction tends to make whether he knowingly or intentionally provided false information regarding the same more or less likely, and is therefore relevant to his intent. Further, regardless of whether it was relevant to his *mens rea*, it is relevant to the *actus reas*, as the Commonwealth must establish an underlying conviction for a misdemeanor crime of domestic violence exists in order to establish that Sasse's response that he had no such conviction was false.

## II. Sufficiency of the Evidence

Sasse argues the Commonwealth failed to present sufficient evidence to support the *mens rea* element of the convictions. He claims it did not establish he knowingly and intentionally made a false statement or that he made a statement that he did not believe to be true. He argues the forms are confusing, as they contain four pages of instructions for two pages of questions and cite numerous sections of Pennsylvania and Federal law. *Id.* at 30.

Sasse distinguishes *Wolak*, 898 A.2d at 1180-81, where the Commonwealth court found that a conviction for disorderly conduct may constitute a disqualifying crime of domestic violence, arguing that a criminal conviction requires that the applicant have the requisite state of mind to falsify the answer. He argues that although the Commonwealth presented evidence that Sasse was convicted of disorderly conduct as a misdemeanor, and the victim was his former wife, the Commonwealth did not establish the underlying conduct and, therefore, did not establish that the conduct was fighting and threatening, or merely tumultuous. He argues there has never been a factual finding that the disorderly conduct conviction is a disqualifying offense. He argues the testimony from both Trooper Brown and his own testimony establish the answers were a mistake.

When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa.Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Brown*, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*) (quoting *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-06 (Pa.Super. 2008)). Further, when addressing the sufficiency of the evidence, we "consider all the evidence at trial, not only that contained

in the Commonwealth's case in chief." ***Commonwealth v. Kuhn***, 475 A.2d 103, 106 (Pa.Super. 1984) (quoting ***Commonwealth v. Ilgenfritz***, 353 A.2d 387, 388 (Pa. 1976)).

The jury convicted Sasse of committing unsworn falsification to authorities and attempt to make a false statement in connection with the purchase or sale of a firearm.

To support a conviction for unsworn falsification to authorities, the Commonwealth must establish that a defendant "ma[de] a written false statement which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable." 18 Pa.C.S.A. § 4904(b). To support a conviction under Section 6111(g)(4)(ii), the Commonwealth must establish a defendant "in connection with the purchase, delivery or transfer of a firearm under this chapter . . . knowingly and intentionally . . . ma[de] any materially false written statement, including a statement on any form promulgated by Federal or State agencies" 18 Pa.C.S.A. § 6111(g)(4)(ii). Further, a person commits an attempt "when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). The intent to commit a specific crime "may be inferred from the actions of the defendant in light of all attendant circumstances." ***Commonwealth v. Chance***, 458 A.2d 1371, 1374 (Pa.Super. 1983); ***Commonwealth v. Galindes***, 786 A.2d 1004, 1010 (Pa.Super. 2001)).

The Crimes Code defines knowingly and intentionally as follows:

**(b) Kinds of culpability defined.--**

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(1)-(2).

In **Commonwealth v. Kennedy**, 789 A.2d 731 (Pa.Super. 2001), this Court concluded that there was insufficient evidence to support a conviction for unsworn falsification to authorities. There, the defendant responded no to the question asked whether he had "ever been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act?" **Id.** at 733. The defendant testified that he interpreted the form, and its instructions, as only prohibiting those whose prior convictions were for crimes that carried a term of imprisonment of two years or more, and his conviction did not carry such a term. **Id.** at 734. This Court concluded that the form "contain[ed] internal

inconsistencies, which leaves the reader in a quandary when to examine the back of the document in advance of answering questions on the face of the application." *Id.* Because of the inconsistencies and the defendant's testimony as to how he misinterpreted the form, we concluded the Commonwealth presented insufficient evidence to support the conviction. *Id.* at 734-35.

Here, unlike in **Kennedy**, the forms did not contain inconsistencies and were not misleading. The Commonwealth established that Sasse answered "no" on the ATF and PSP forms when asked whether he was subject to a PFA. Further, he answered "no" when asked whether he had ever been convicted of a misdemeanor crime of domestic violence. The ATF form defined "misdemeanor crime of domestic violence" as has a crime that has "as an element the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabited with the victim as a spouse. . . ." ATF Form. The PSP form referenced 18 U.S.C. § 922, and included the classification of the victims that would classify a crime as a crime of domestic violence. PSP Form. Sasse admitted to reading the forms, including the instructions. Trooper Brown testified that Sasse told him that he believed the PFA was for two, not three, years, and that he did not believe the disorderly conduct conviction was a misdemeanor crime of domestic violence. Sasse testified to the same at trial. However, the jury heard testimony and received evidence establishing that the PFA was for three, not two years, and

that Sasse was convicted of disorderly conduct as a misdemeanor, and that he knew the conduct underlying the conviction included "fighting" with his former spouse. Such evidence is sufficient to establish that Sasse intended to provide false information and that he "knew the answer[s] to be false."

Judgment of sentence affirmed.

Judge Murray joins the Memorandum.

Judge Colins notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/2020